[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

No. 04-10805

_____

BIA No. A29-380-837

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 21, 2005
THOMAS K. KAHN
CLERK

IVENNE LILLIANNE ALEXIS,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

**Petition for Review of an Order of the
Board of Immigration Appeals**

_____

**(November 21, 2005)**

**Before HULL, MARCUS and HILL, Circuit Judges.**

**MARCUS, Circuit Judge:**

Petitioner Ivenne Lillianne Alexis, through counsel, seeks review of the

Board of Immigration Appeals ("BIA") decision affirming without opinion the

Immigration Judge's ("IJ") order denying her application for adjustment of status under the Haitian Refugee Immigration Fairness Act of 1998, Pub. L. No. 105-277, 112 Stat. 2681 ("HRIFA"). Additionally, Alexis contends that the IJ improperly denied her "Motion to Allow Re-Hearing" related to an excludability charge that resulted in her order of deportation. Because we lack jurisdiction to hear her petition, we dismiss this appeal.

**I**

The essential facts are these. On November 24, 1990, Ivenne Lillianne Alexis, a native and citizen of Haiti, attempted to enter the United States by presenting a fraudulent passport in the name of Julia Berlus. She was charged, pursuant to the applicable provisions of the Immigration and Nationality Act ("INA"), with being excludable for having attempted to enter this country by means of fraud or by willful misrepresentation of a material fact and as an immigrant not in possession of proper documentation. She appeared before an IJ, admitted the factual allegations contained in the charging documents, and conceded her excludability. She then applied for asylum and withholding of deportation (now removal).

The IJ denied the requested relief on November 20, 1991, thereby ordering her deportation to Haiti. Alexis appealed, and the BIA affirmed on December 16, 1997. Notably, she did not seek judicial review of that decision.

Almost two years later, on October 20, 1999, Alexis petitioned the former Immigration and Naturalization Service ("INS") for an adjustment of status under HRIFA. The INS determined that she was not eligible for an adjustment because she had been excluded for attempting to enter the country by fraudulent means. Additionally, the agency found that it could not waive the rules barring her adjustment because she did not have the statutorily required spouse or relative that was either a U.S. citizen or a lawful permanent resident. The agency referred its decision to an IJ by filing a Notice of Certification.

Alexis argued to the IJ that the agency had improperly denied her request for adjustment of status and that she should be permitted to reargue the original excludability charge. The IJ affirmed the ruling of the agency, finding that Alexis was ineligible for the status adjustment. She appealed to the BIA, which again affirmed the decision of the IJ. She now seeks relief from this Court, arguing that she was improperly denied an adjustment under HRIFA and that she should have been permitted to reargue the excludability charge. The Attorney General

3

contends, however, that we have no jurisdiction to review Petitioner's allegations, and that even if jurisdiction exists, Petitioner's arguments fail on the merits.

## II

We are obliged to inquire into our own jurisdiction whenever it may be lacking. Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004). Moreover, we determine our subject matter jurisdiction de novo. Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1266 (11th Cir. 2004). Finally, we review the agency's statutory interpretation de novo, but defer to that interpretation if it is reasonable. Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001).

HRIFA enumerates various conditions under which an alien who is a national of Haiti may apply to have her status adjusted to that of an alien lawfully admitted to this country for permanent residence. As relevant to this case, the law applies to a Haitian national who was in the United States on December 31, 1995, applied for asylum prior to December 31, 1995, and who has been physically present in the United States for a continuous period beginning not later than December 31, 1995 and ending not earlier than the date of application for status adjustment. HRIFA § 902(b). Alexis appears to meet those requirements, and

4

neither party argues to the contrary. However, HRIFA also requires that the alien be otherwise admissible to the United States for permanent residence. HRIFA § 902(a)(1)(B). HRIFA creates exceptions to the normal admissibility requirements, listing several grounds for inadmissibility set forth in the INA that do not apply to a HRIFA applicant. Id. None of those exceptions apply to this case, and there is no need to consider them in any detail.

The IJ found that Alexis was not entitled to the HRIFA adjustment because she was not otherwise admissible pursuant to section 212(a)(6)(C) of the INA, codified at 8 U.S.C. § 1182(a)(6)(C), which classifies as inadmissible any alien who has attempted to procure admission into the United States by fraud or by willfully misrepresenting a material fact. 8 U.S.C. § 1182(a)(6)(C)(i). Moreover, the IJ found that she was ineligible for the waiver provision associated with subsection (a)(6)(C), which applies to an immigrant who is the spouse or child of a United States citizen or of an alien lawfully admitted for permanent residence and who can demonstrate that refusal of admission to the United States would result in extreme hardship to that citizen or lawfully resident relative. 8 U.S.C. § 1182(i)(1).

The Attorney General argues that we have no jurisdiction to review the agency's HRIFA decision by virtue of section 902(f) of that Act, which provides

5

that "[a] determination by the Attorney General as to whether the status of any alien should be adjusted under this section is final and shall not be subject to review by any court." HRIFA § 902(f).

We have not previously analyzed this jurisdictional section of HRIFA in a published opinion.[1] We have, however, interpreted an identical provision of the Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA), Pub. L. No. 105-100, 111 Stat. 2193. See Ortega v. U.S. Att'y Gen., 416 F.3d 1348 (11th Cir. 2005). Like HRIFA section 902(f), NACARA contains a provision providing that "[a] determination by the Attorney General as to whether the status of any alien should be adjusted under this section is final and shall not be subject to review by any court." NACARA § 202(f). In Ortega, we held that although there is a presumption favoring judicial review, the "unequivocal language of [NACARA] section 202(f) overcomes the presumption of judicial review." Ortega, 416 F.3d at 1350. We can discern no reason for treating the identical section of HRIFA differently. At all events, the language embodied in section 902(f) could not be any clearer. Moreover, the applicable federal regulation also provides that "[p]ursuant to the provisions of section 902(f) of

---

[1]In two unpublished opinions, we held that HRIFA section 902(f) deprives us of jurisdiction to consider the merits of an adjustment of status decision. See Sicar v. U.S. Att'y Gen., No. 04-15915 (11th Cir. Aug. 31, 2005); Honore v. U.S. Att'y Gen., No. 04-13068 (11th Cir. June 15, 2005). Those opinions are consistent with the result we reach in this case.

6

HRIFA, there shall be no judicial appeal or review of any administrative determination as to whether the status of an alien should be adjusted under the provisions of section 902 of HRIFA." 8 C.F.R. § 1245.15(v).

Our finding that we have no jurisdiction to consider the adjustment decision does not, however, completely end our inquiry. In prior cases where we have addressed jurisdictional-limiting provisions of other immigration laws, we have held that we retain jurisdiction to consider "substantial constitutional challenges" to the statute itself. See Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1333 (11th Cir. 2003) (addressing section 242(a)(2)(B) of the INA); see also Moore v. Ashcroft, 251 F.3d 919, 923-24 (11th Cir. 2001). That jurisdiction encompasses only "substantial" constitutional challenges; "[w]here a constitutional claim has no merit . . . we do not have jurisdiction." Gonzalez-Oropeza, 321 F.3d at 1333.

Alexis essentially argues that aliens of different status and nationality are treated differently under the many immigration laws that govern admission into this country, and that such divergent treatment violates the equal protection component of the Fifth Amendment's Due Process Clause.[2] Specifically, she

---

[2]For example, to have her status adjusted, Alexis had to be "otherwise admissible" pursuant to INA section 212, codified at 8 U.S.C. § 1182. That section contains the exemption, noted above, for those aliens who are the spouse, son, or daughter of a U.S. citizen or permanent resident alien if refusal of admission would result in "extreme hardship" to that citizen or permanent resident alien.

7

contends that Cuban refugees seeking adjustment under the Cuban Refugee Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161 (1966), are afforded different, and in her opinion less exacting, treatment than are Haitian nationals seeking adjustment under HRIFA.

The asserted constitutional claim fails to provide us with jurisdiction because, under controlling case law, that claim is not "substantial." This is so because an alien seeking initial admission into the United States is merely requesting a privilege and has no constitutional right regarding her application for admission. Landon v. Plasencia, 459 U.S. 21, 32, 103 S. Ct. 321, 329, 74 L. Ed. 2d 21 (1982). See also Kwong Hai Chew v. Colding, 344 U.S. 590, 600, 73 S. Ct. 472, 479, 97 L. Ed. 576 (1953). We have consistently held that excludable aliens have no constitutional right to admission into this country; they have only those rights statutorily granted by Congress. See Garcia-Mir v. Smith, 766 F.2d 1478, 1484 (11th Cir. 1985) (noting that excludable aliens have no constitutional rights with regard to their applications); Jean v. Nelson, 727 F.2d 957, 968-70 (11th Cir. 1984) (en banc) (holding that an excludable alien had no claim under the equal

_____

8 U.S.C. § 1182(i)(1). Conversely, refugees admitted to this country under INA section 207, codified at 8 U.S.C. § 1157, are subject to a more lenient exemption, one which may be granted for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest. 8 U.S.C. § 1159. Alexis, who would much rather be operating under the more expansive exemption contained within section 1159, contends that it violates Due Process to treat her differently from the refugees who are covered by that section.

8

protection clause alleging that Haitians were disproportionately affected by a particular policy), aff'd on other grounds, 472 U.S. 846, 105 S. Ct. 2992, 86 L. Ed. 2d 664 (1985).[3]

There can be no argument that Alexis is anything other than an excludable alien. Indeed, the underlying HRIFA application was submitted in an attempt to adjust her status from that of excludable alien to one who has been lawfully admitted. Because Alexis is an excludable alien, we can discern no palpable constitutional claim regarding her application for admission. Quite simply, we have no jurisdiction to hear her substantive challenge to the adjustment decision because of the plain language of HRIFA and no jurisdiction over her constitutional challenge to the statute because that claim is not a substantial one.

Alexis's final contention is that she should have been permitted to "re-argue" the merits of the underlying excludability charges that were finally adjudicated when the BIA affirmed the IJ's decision designating her as excludable.

---

[3]This is not to say that excludable aliens are afforded no protection by the Constitution. See, e.g., Jean, 727 F.2d at 972 (noting that excludable aliens "can raise constitutional challenges to deprivations of liberty or property outside the context of entry or admission, when the plenary authority of the political branches is not implicated"); United States v. Henry, 604 F.2d 908, 914 (5th Cir. 1979) (holding that an alien held at the border has the protections of the Fifth Amendment in criminal proceedings). See also Lynch v. Cannatella, 810 F.2d 1363, 1374 (5th Cir. 1987) (noting that excludable aliens are entitled under the due process clause to be free of "gross physical abuse" at the hands of state or federal officers).

9

This claim need not detain us for long, as she failed to exhaust the possible administrative remedies related to this issue.

The only issue ruled upon by the INS was the request for an adjustment of status under HRIFA. Accordingly, that was the only issue certified to the IJ, and the only issue addressed in the IJ's oral decision. Because the BIA affirmed without decision, the decision of the IJ became the final agency decision. Although Alexis may have argued to both the IJ and the BIA that she should be able to "re-argue" the original excludability determination, it is clear that she never moved to reopen or reconsider before the BIA, as authorized by 8 C.F.R. § 1003.2, or moved to reopen or reconsider before the Immigration Court, as authorized by 8 C.F.R. § 1003.23. Because those options were available to Alexis, and because she chose not to take advantage of them, she has failed to exhaust her administrative remedies. We lack the jurisdiction to consider an issue when the administrative remedies were not exhausted. See Asencio v. I.N.S., 37 F.3d 614, 615-16 (11th Cir. 1994).

In short, we are constrained to conclude that we have no jurisdiction to hear Alexis's substantive challenge to the adjustment decision because of the congressional command in section 902(f) of HRIFA, no jurisdiction over her constitutional challenge because it is not substantial, and no jurisdiction over her

10

claim that she should have been permitted to reargue the underlying excludability charges because that claim was not exhausted.

**DISMISSED**.