[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

No. 07-14072

———————————————

D. C. Docket No. 06-22502-CV-UU

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 27, 2008
THOMAS K. KAHN
CLERK

FRANCOISE SICAR,
SONY SANEUS, et al.,

Plaintiffs-Appellants,

versus

MICHAEL CHERTOFF,
EMILIO T. GONZALEZ, et al.,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

**(August 27, 2008)**

Before BLACK and MARCUS, Circuit Judges, and EVANS,[*] District Judge.

BLACK, Circuit Judge:

———————————————

[*] Honorable Orinda Evans, United States District Judge for the Northern District of Georgia, sitting by designation.

Appellants Francoise Sicar, Sony Saneus, Kerby Sicar, Monushka Sicar, and Emilien Honore appeal the dismissal of their class action complaint, which they filed against a group of defendants we will refer to as "the Government."[1]  In their complaint, Appellants seek declaratory and injunctive relief, alleging the Government has systematically misclassified their parole status during the course of status adjustment determinations under the Haitian Refugee Immigration Fairness Act of 1998, Pub. L. No. 105-277, 112 Stat. 2681 (HRIFA).  The district court dismissed Appellants' complaint, concluding the Appellants lacked standing to bring the claims asserted therein and it lacked subject matter jurisdiction to hear them.  After review, we affirm because we lack subject matter jurisdiction.

## I.  BACKGROUND

### A.  Status Adjustment Under HRIFA

Under HRIFA § 902, an alien who has been ordered excluded, deported, removed, or to voluntarily depart can apply for an adjustment of status, whereby his immigration status is adjusted to that of an alien lawfully admitted for

---

[1]Defendants are Michael Chertoff, Secretary of the Department of Homeland Security; Emilio Gonzalez, Director of United States Citizenship and Immigration Services (CIS); Linda Swacina, Miami District Director, CIS; Marion Dills, Officer in Charge, Krome Service Processing Center, United States Immigration and Customs Enforcement (ICE), United States Department of Security; and Michael Rozos, Field Office Director, Miami ICE Detention and Removal Office, United States Department of Homeland Security.

2

permanent residence. *See* HRIFA § 902(a), (b). A status adjustment is available to any Haitian alien who:

> (1) was present in the United States on December 31, 1995, who--(A) filed for asylum before December 31, 1995, (B) was paroled into the United States prior to December 31, 1995, after having been identified as having a credible fear of persecution, or paroled for emergent reasons or reasons deemed strictly in the public interest, or (C) was a child . . . at the time of arrival in the United States . . . .

HRIFA § 902(b). The present case involves the route for status adjustment specified in § 902(b)(1)(B), which deals with Haitian aliens who have been paroled into this country.

HRIFA also contains a jurisdiction-stripping provision that relates to status adjustment determinations under § 902(b). Section 902(f) provides, "[a] determination by the Attorney General as to whether the status of any alien should be adjusted under this section is final and shall not be subject to review by any court."

B. *Appellants' Class Action Complaint*

On October 10, 2006, Appellants filed a class action complaint in the United States District Court for the Southern District of Florida. The members of the purported class are Haitian nationals who, prior to December 31, 1995, arrived

3

in the United States without lawful immigration status, were taken into immigration custody, and were released on their own recognizance.

In their complaint, Appellants assert four counts of statutory and constitutional violations arising from the Government's determinations that their releases-on-recognizance do not qualify as "parole" for purposes of HRIFA § 902(b). First, Appellants claim the Government's finding they had not been paroled is improper as a matter of statutory interpretation. Second, Appellants allege the Government's unpromulgated policy, pursuant to which releases-on-recognizance do not constitute paroles, violates the Administrative Procedure Act (APA). In the third count, Appellants claim the Government has violated equal protection by finding non-Haitians' releases-on-recognizance qualify as paroles, while Haitian aliens' do not. Finally, Appellants claim their due process rights have been violated by the Government's alleged misclassifications.

Appellants' complaint requests a declaratory judgment that the Government has unlawfully misclassified their parole status and that their releases-on-recognizance constitute parole for purposes of HRIFA § 902(b). They also seek an order compelling the Government to allow them a reasonable time during which to file, amend, or renew their status adjustment applications.

*C. Procedural History*

On November 22, 2006, the Government filed a motion to dismiss Appellants' complaint based on a lack of subject matter jurisdiction. The district court, on March 9, 2007, issued an order dismissing Appellants' complaint. The court based its dismissal on Appellants' lack of standing, so it did not address whether it had subject matter jurisdiction. As to standing, the court concluded Appellants had not demonstrated an actual injury, since they failed to allege they had filed for asylum prior to December 31, 1995, a requirement under § 902(b)(1)(A).

Appellants filed a motion for relief from the district court's dismissal order, alleging the district court had erred in analyzing the status adjustment requirements of § 902(b)(1)(A). On June 29, 2007, the district court entered the order on which the current appeal is based. The court acknowledged it had wrongly applied § 902(b)(1)(A) to Appellants' case. Since the statute is disjunctive and Appellants were proceeding under § 902(b)(1)(B), the parole section, they did not need to show they had applied for asylum, a requirement under § 902(b)(1)(A). However, the district court held that, even under § 902(b)(1)(B), Appellants still lacked standing, since their complaint did not allege they had met the other requirements for status adjustment under

5

§ 902(b)(1)(B) besides having been paroled.  Thus, the court found, Appellants had not established any of the three standing requirements:  injury in fact, causation, or redressibility.  The court also held it lacked subject matter jurisdiction to review Appellants' status adjustment determinations under § 902(f).  In doing so, the court rejected Appellants' argument that the alleged misclassification of their parole status was a reviewable threshold issue, one made prior to the status adjustment determination and thus outside of § 902(f)'s coverage.  Moreover, the court concluded that despite Appellants' characterization of their cause of action as a challenge to the systemic violations carried out by the Government, they effectively sought a declaration that they were entitled to adjust their status under HRIFA, and the court was plainly precluded from considering such a challenge under § 902(f).

## II.  DISCUSSION

### A.  Standard of Review

We review standing and subject matter jurisdiction *de novo*.  *Garcia v. Att'y Gen. of U.S.*, 329 F.3d 1217, 1220 (11th Cir. 2003) (subject matter jurisdiction); *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1229 (11th Cir. 1999) (standing).

*B. Standing*

To have standing in federal court, a plaintiff must meet three requirements. First, he must have suffered an injury in fact: "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (quotations and citations omitted). Second, there must be a causal connection between his injury and the conduct he challenges, i.e., his injury must be fairly traceable to the challenged actions of the defendant. *Id.* Third, it must be likely that plaintiff's injury will be redressed by a favorable decision of the court. *Id.* at 561, 112 S. Ct. at 2136.

The district court determined Appellants failed to meet any of the three standing requirements. The court concluded Appellants' claim they had been wrongfully denied status adjustments under § 902(b) was insufficient to allege an injury in fact, since Appellants did not allege they would be eligible for adjustments even if they were classified as having been paroled. In so concluding, the court noted the complaint contained no allegations that Appellants were present in the United States as of December 31, 1995, or that they had been paroled "after having been identified as having a credible fear of persecution, or paroled for emergent reasons or reasons deemed strictly in the public interest."

7

*See* § 902(b)(1)(B). Even if the Appellants had shown an injury in fact, the court noted they still had not shown their injury was fairly traceable to the Government's alleged misclassification because they failed to demonstrate they were otherwise eligible for status adjustments. Finally, as to redressibility, the court determined that even if it granted Appellants' requested relief and recognized their releases-on-recognizance as paroles, Appellants still would not be eligible for status adjustments, since having been paroled alone is not sufficient to qualify for adjustments under § 902(b)(1)(B).

The district court clearly read Appellants' complaint as alleging their injury to be the denial of status adjustments under § 902(b). However, a plain reading of their complaint indicates the injury they allege is actually the misclassification of their releases-on-recognizance, not the ultimate denial of their status adjustment applications. Appellants claim they were denied a classification to which they were entitled—that of parolees for purposes of § 902(b). This alleged misclassification is an injury in fact for standing purposes, regardless of how Appellants' ultimate status adjustment determinations may be resolved. Also, this injury is fairly traceable to the actions of the Government, as it was the Government that allegedly misclassified Appellants' releases-on-recognizance. Moreover, this injury would be redressed by a favorable decision in federal court.

8

Were the court to find Appellants had been paroled, the misclassification would be corrected, and Appellants could have another attempt to have their status adjusted, this time without the allegedly incorrect initial classification. Thus, Appellants have met the constitutional requirements of standing.[2]

*C. Subject Matter Jurisdiction*

As set forth above, HRIFA § 902(f) provides, "[a] determination by the Attorney General as to whether the status of any alien should be adjusted under this section is final and shall not be subject to review by any court." Relying on this provision, the district court dismissed Appellants' complaint for lack of subject matter jurisdiction. Despite the operation of § 902(f), Appellants contend the district court had subject matter jurisdiction for two independent reasons. First, Appellants claim whether they have been paroled for purposes of § 902(b) is a threshold determination, one that precedes the status adjustment determination and is thus reviewable by courts. Second, they argue their complaint, rather than challenging individual status adjustment determinations, alleges systemic violations by the Government in its alleged misclassification of Appellants'

---

[2]Appellants' complaint states they have been denied "certain immigration and non-immigration benefits that depend on the proper classification of their ROR orders as paroles." To the extent Appellants contend this statement alleges an injury in fact outside the context of their HRIFA status adjustments, we disagree. Having been denied unspecified "non-immigration benefits," without more, is far too speculative and not sufficiently particularized to constitute an injury in fact.

releases-on-recognizance, and this pattern of misclassification remains subject to judicial review.

*1. Threshold determination*

Relying on *Moore v. Ashcroft*, 251 F.3d 919 (11th Cir. 2001), Appellants claim whether they have been paroled is a threshold issue, one that arises prior to the Government's status adjustment decision and is thus reviewable, despite the jurisdiction-stripping language of § 902(f). In *Moore*, we analyzed the following jurisdiction-stripping provision found in INA § 242(a)(2)(C): "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [certain enumerated criminal offenses]." 251 F.3d at 923. We noted our prior precedent, which is based on the plain language of this provision, allowed us to review "the threshold issues of whether Petitioner is (1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense." *Id.* Then, if these conditions are satisfied, our jurisdiction over a petition for review would disappear. *Id.*

Appellants contend that, under *Moore*, we have jurisdiction to review, as a threshold matter, whether they have been granted paroles. However, unlike the jurisdiction-stripping provision in *Moore*, § 902(f) contains no imbedded

10

threshold issues. Instead, it is quite clear: "A determination by the Attorney General as to whether the status of any alien should be adjusted under this section is final and shall not be subject to review by any court." HRIFA § 902(f). In *Moore*, the three reviewable threshold issues we recognized were found very plainly in the language of INA § 242(a)(2)(C). In contrast, the threshold "parole" issue Appellants ask us to read into § 902(f) is not in any way referenced in that provision. Having been paroled is one of the requirements for status adjustment under § 902(b), and the status adjustment determination under that provision is the very determination we are prohibited from reviewing under the plain language of § 902(f). The only even arguable threshold issue set forth in § 902(f) is whether there has been a determination by the Attorney General. If there has been, and in this case there has, we have no jurisdiction to review it. The language of § 902(f) could not be plainer. The district court did not err in disregarding Appellants' threshold issue argument.

### 2. *Systemic violations*

Despite the general presumption in favor of judicial review, we have held § 902(f) plainly strips us of jurisdiction to review status adjustment determinations. *Alexis v. U.S. Att'y Gen.*, 431 F.3d 1291, 1294 (11th Cir. 2005). However, we retain jurisdiction to consider substantial constitutional challenges to

11

the immigration statute itself. *Id.* at 1295. If a constitutional claim is meritless, we do not have jurisdiction to consider it. *Id.*

### a. Count one

Count one of Appellants' complaint, in which they contest the Government's alleged misclassification of their parole status on statutory interpretation grounds, fails to provide us with jurisdiction. This is because the determination of whether an applicant has been paroled is inextricably bound up in the actual status adjustment determination under § 902(b). It is a decision made during, and as a part of, the ultimate status adjustment determination, judicial review of which is plainly prohibited by § 902(f).

Appellants claim count one does not challenge the merits of individual status adjustment determinations, but instead alleges a class-wide, systemic wrong in the way the Government has misclassified and continues to misclassify their releases-on-recognizance. Thus, relying on *Tefel v. Reno*, 180 F.3d 1286 (11th Cir. 1999), they contend we have jurisdiction to consider this claim. In *Tefel*, the plaintiffs advanced a challenge to the BIA's interpretation of a newly enacted "stop-time" provision. *Id.* at 1290. In order to be eligible for suspension of deportation, an alien was required to establish four factors, one of which was that he had been physically present in the United States for a certain period of time.

12

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) revised the INA and included a stop-time provision, under which the period of physical presence is deemed to end once the alien is served with a notice to appear or commits an enumerated criminal offense. The BIA held the stop-time provision applied retroactively to aliens who had applied for suspension of deportation prior to the enactment of IIRIRA. It was this interpretation that was the subject of the plaintiffs' class action complaint in *Tefel*. *Id.* at 1289-90.

The pre-IIRIRA judicial review scheme at play in *Tefel* gave appellate courts exclusive jurisdiction over challenges to deportation proceedings. *Id.* at 1290, 1297. Yet, plaintiffs brought their class action complaint in federal district court. *Id.* at 1290. We determined the plaintiffs, rather than challenging their individual deportation proceedings, had asserted "a program, pattern or scheme by immigration officials to violate the constitutional rights of aliens," and this was the type of challenge to INS practices that fell outside the pre-IIRIRA judicial review scheme. *Id.* at 1297. Thus, the appellate court did not have exclusive jurisdiction, and the district court had properly exercised jurisdiction over the complaint. In so concluding, we noted, "[p]laintiffs do not challenge the specific result in any single case and do not argue that any of the individual [p]laintiffs would receive suspension of deportation if their applications received full

13

consideration." *Id.* Had the plaintiffs lobbied such a challenge, it would have fallen under the exclusive jurisdiction of the appellate courts.

Though *Tefel* dealt with a jurisdiction provision that differentiated between district and appellate court jurisdiction, its distinction between challenges involving the merits of an INS determination and those alleging a broad program or scheme orchestrated to violate the rights of aliens is instructive. What the plaintiffs did not challenge in *Tefel* is exactly what Appellants challenge in the present case. *Tefel* involved an attack on the BIA's interpretation of a piece of legislation, an interpretation that applied uniformly to all similarly situated applicants. Here, rather than challenging an interpretation made collaterally to the status adjustment proceedings themselves and uniformly applicable in every case, as the plaintiffs did in *Tefel*, Appellants challenge the Government's findings, in individual cases, that their releases are not paroles for purposes of status adjustments. While each decision as to whether Appellants were paroled has come out the same way and thus might be likened (in effect anyway) to a uniformly applicable rule, the reality is each decision is made solely in the course of the adjustment proceedings. This is fundamentally different from the BIA interpretation challenged in *Tefel*. Appellants in effect seek to challenge the Government's resolutions of their status adjustment applications. They could not

do this were they to file individual complaints. The fact that they attempt to do so as a class, rather than individually, does not give us jurisdiction.

Appellants also rely on *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 111 S. Ct. 888 (1991), to support their contention that we have jurisdiction. At issue in *McNary* was the procedure for status adjustment for "special agricultural workers" (SAWs). The SAW program was part of the Reform Act of 1986 and, like HRIFA § 902(b), offered SAWs the opportunity to apply for a status adjustment as long as certain prerequisites were met. *Id.* at 481-83, 111 S. Ct. at 890-91. The Reform Act contained a jurisdiction-limiting provision which prohibited judicial review of the final administrative determination of a SAW status adjustment, except as part of the judicial review of an order of exclusion or deportation. *Id.* at 485-86, 111 S. Ct. at 893. To administer the SAW program, the INS adopted regulations, pursuant to which each applicant was afforded a personal interview. *Id.* at 485, 111 S. Ct. at 892. Plaintiffs brought a class action suit alleging the interview process was conducted in an arbitrary fashion that deprived applicants of due process. *Id.* at 487, 111 S. Ct. at 893-94. Among the alleged procedural deficiencies in the interview process were that applicants were not given the opportunity to challenge adverse evidence, they could not present witnesses on their behalf, non-English speaking applicants were not provided

15

translators, and no recordings of the interviews were made. *Id.* at 487-88, 111 S. Ct. at 893-94.

*McNary* involved a collateral attack on the process used to determine status adjustment eligibility. The challenge lobbied there was clearly aimed at procedural deficiencies present in the interview process, not at the outcome of the status adjustment determinations. Here, as discussed above, Appellants' claim is a direct attack on a substantive determination—whether Appellants were paroled—that is but one component of the ultimate status adjustment determination. This is not an attack on some collateral, procedural aspect of the status adjustment determination; it is an attack on an aspect of the substantive determination itself. Under the plain terms of § 902(f), we do not have jurisdiction to review such an attack.

### b. Count two

In count two, Appellants claim the Government adopted an unpromulgated policy, pursuant to which their releases-on-recognizance do not constitute paroles for purposes of § 902(b), and this policy violates the APA, insomuch as the Government did not publish notice in the Federal Register or provide the public an opportunity to comment prior to implementing the policy. The district court made no specific reference to this claim when dismissing Appellants' complaint.

Despite being couched in terms of the APA, count two, at its heart, is but another attempt by Appellants to challenge the merits of their status adjustment determinations. This is confirmed by the relief they request in their complaint. Appellants do not ask the court to invalidate the allegedly unpromulgated policy and force the Government to undertake notice and comment. Instead, they seek a declaration that their releases-on-recognizance constitute paroles for purposes of § 902(b). Thus, as with count one, Appellants' APA claim is most properly characterized as one seeking review of their status adjustment determinations, and § 902(f) prohibits us from exercising jurisdiction over such a claim.

### c. Counts three and four

In counts three and four of their complaint, Appellants allege constitutional violations. First, they claim their equal protection rights have been violated by the differing treatment of Haitian and non-Haitian refugees in status adjustment proceedings. Second, Appellants challenge on due process grounds the Government's alleged misclassification of their parole status.

In *Alexis*, the plaintiff argued aliens of different status and nationality were treated differently under the many immigration laws governing admission into the United States, and this divergent treatment violated due process. 431 F.3d at 1295. We concluded we lacked jurisdiction to consider this constitutional claim

under § 902(f) because it was not substantial. *Id.* We noted aliens seeking initial admission into the United States are requesting a privilege; they do not have a constitutional right regarding their applications. *Id.* "[E]xcludable aliens have no constitutional right to admission into this country; they have only those rights statutorily granted by Congress." *Id.*; *see also Garcia-Mir v. Smith*, 766 F.2d 1478, 1484 (11th Cir. 1985) (noting excludable aliens do not have constitutional rights with regard to their admission applications).

Appellants, like the plaintiff in *Alexis*, are inadmissible aliens.[3] We know this because they were taken into custody as they attempted to enter the United States without lawful immigration status. *Garcia-Mir*, 766 F.2d at 1483-84. That they have been and indeed are currently physically present in the United States, having been released on their own recognizance, does not change this status. *Id.* at 1484. In fact, their HRIFA applications were submitted in hopes of having their inadmissible alien status adjusted to that of lawfully admitted residents. *See Alexis*, 431 F.3d at 1295-96. Because Appellants are inadmissible aliens, they have no constitutional rights regarding their applications for status adjustments.

---

[3]The IIRIRA replaced the term "excludable" with "inadmissible." *Garcia v. Att'y Gen. of U.S.*, 329 F.3d 1217, 1221 (11th Cir. 2003).

Thus, their constitutional claims are not substantial, and we have no jurisdiction to review them.

In sum, due to the operation of § 902(f), we have no jurisdiction to hear Appellants' statutory challenges to the Government's alleged misclassification of their releases-on-recognizance.[4] We also lack jurisdiction to entertain their constitutional challenges because they are not substantial.

## III. CONCLUSION

For the foregoing reasons, we conclude the district court erred in finding Appellants lacked standing to pursue their class action suit. However, because we have no jurisdiction to hear the claims lobbied in Appellants' complaint, the district court's dismissal of the complaint for lack of subject matter jurisdiction is

**AFFIRMED**.

---

[4]In their brief, Appellants assert, "[i]ndependent of any link to HRIFA relief . . . Appellants' principal statutory claim was that there was no legal basis in the INA for the orders of release on personal recognizance that the Haitian Refugees and members of their class received . . . ." However, no such claim is made in their complaint, which focuses exclusively on the Government's alleged misclassification of their releases-on-recognizance during the HRIFA status adjustment determinations. Because a claim independent of HRIFA was never raised, we need not determine whether we have jurisdiction over it.