[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13652
_____

Agency No. 40 CFR PART 122

FRIENDS OF THE EVERGLADES,

Petitioner,

versus

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent,

SOUTH FLORIDA WATER MANAGEMENT DISTRICT,
CAROLE WEHLE,

Intervenors.

_____

No. 08-13653
_____

Agency No. 40 CFR PART 122

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA,

Petitioner,

versus

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent

SOUTH FLORIDA WATER MANAGEMENT DISTRICT,
CAROL WEHLE,

Intervenors.

————————————————

No. 08-13657

————————————————

Agency No. 40 CFR PART 122

FLORIDA WILDLIFE FEDERATION, INC.,

Petitioners,

versus

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent,

SOUTH FLORIDA WATER MANAGEMENT DISTRICT,
CAROL WEHLE,

Intervenors.

2

_____

No. 08-14921
_____

Agency No. 40 CFR PART

SIERRA CLUB, INC.,

ENVIRONMENTAL CONFEDERATION OF SOUTHWEST FLORIDA,

Petitioners,

versus

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent,

UNITED STATES SUGAR CORPORATION,

Intervenor.

_____

No. 08-16283
_____

Agency No. EPA-HQ-OW

STATES OF NEW YORK, CONNECTICUT, DELAWARE,
ILLINOIS, MAINE, MICHIGAN, MINNESOTA,
MISSOURI, WASHINGTON,
GOVERNMENT OF THE PROVINCE OF MANITOBA, CANADA,

Petitioners,

versus

3

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
STEPHEN L. JOHNSON,

                                                Respondents.

_____

Petitions for Review of a Decision of the
Environmental Protection Agency
_____
(October 26, 2012)

Before BARKETT and PRYOR, Circuit Judges, and BATTEN,[*] District Judge.

PRYOR, Circuit Judge:

In this matter, we must decide whether we have original subject matter jurisdiction over several petitions for review of an administrative rule that exempts transfers of waters of the United States from the requirements for a permit under the Clean Water Act, 33 U.S.C. § 1251 et seq., or whether we may avoid deciding that question and instead exercise hypothetical jurisdiction to decide the merits of the petitions. Friends of the Everglades, several other environmental organizations, nine states, the province of Manitoba, Canada, and the Miccosukee Tribe argue that original jurisdiction belongs in a district court, but they filed protective petitions for review of the water-transfer rule in this and another circuit

_____
[*]Honorable Timothy C. Batten, Sr., United States District Court for the Northern District of Georgia, sitting by designation.

4

after the Administrator of the Environmental Protection Agency stated her position that the initial judicial review of the rule could be had only in the circuit courts of appeals. The Judicial Panel on Multidistrict Litigation consolidated the petitions in this Court. The South Florida Water Management District and the United States Sugar Corporation intervened to defend the rule alongside the Administrator. United States Sugar urges us to exercise hypothetical jurisdiction and deny the petitions. But we hold that, under the plain language of the governing statute, id. § 1369(b)(1), we lack original subject matter jurisdiction to review the petitions and we may not exercise hypothetical jurisdiction over them. We dismiss the petitions.

## I. BACKGROUND

In 1972, Congress enacted the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Id. § 1251(a). As part of this effort, the Act prohibited "the discharge of any pollutant by any person" except when permitted by law. Id. § 1311(a). The Act empowered the Administrator of the Environmental Protection Agency to issue permits for discharges of pollutants. Id. § 1342(a)(1). The Act granted broad authority to the Administrator "to prepare or develop comprehensive programs for preventing, reducing, or eliminating the pollution of the navigable waters." Id. § 1252(a). The Act also granted the Administrator the authority to prescribe regulations to

administer the Act.  Id. § 1361(a).  The Administrator interpreted this authority to allow her to grant permanent exemptions from the requirements for a permit.  See 40 C.F.R. § 122.3.

In 2002, the Friends of the Everglades and the Fishermen Against the Destruction of the Environment sought an injunction to force the South Florida Water Management District to obtain a permit to transfer water from the polluted canals of the Everglades Agricultural Area into Lake Okeechobee.  Friends of the Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1214 (11th Cir. 2009).  The district court allowed several parties to intervene in the lawsuit, including the Environmental Protection Agency, the Miccosukee Tribe, and the United States Sugar Corporation.  Id.  The environmental groups argued that the water transfer introduced pollutants into the lake and was a discharge subject to the requirements for a permit.  Id. at 1216.  The Act defined "discharge" as "any addition of any pollutant to navigable waters from any point source."  Id. (quoting 33 U.S.C. § 1362(12)).  The Water District argued that, when it transferred pollutants from the canals to the lake, it did not alter the existing level of pollutants in United States waters.  Id. at 1217.  For that reason, the Water District argued that its activities did not fall within the definition of "discharge."  Id.

After a two-month bench trial, the district court enjoined the Water District to apply for a permit from the Administrator. Id. at 1214–15. The district court interpreted the Clean Water Act to require a permit for "water transfers between distinct water bodies that result in the addition of a pollutant to the receiving navigable water body." Friends of the Everglades v. S. Fla. Water Mgmt. Dist., No. 02-80309, 2006 WL 3635465, at *48 (S.D. Fla. Dec. 11, 2006), rev'd, 570 F.3d 1210 (11th Cir. 2009). The Water District appealed the judgment. 570 F.3d at 1215.

Before the district court entered its injunction, the Administrator issued a notice of proposed rulemaking to create an exemption for water transfers from the permit requirements of the Act. National Pollutant Discharge Elimination System (NPDES) Water Transfers Proposed Rule, 71 Fed. Reg. 32,887, 32,891 (proposed June 7, 2006). After receiving public comments, the Administrator issued a notice of final rule. 73 Fed. Reg. 33,697, 33,708 (June 13, 2008) (codified at 40 C.F.R. § 122.3). The rule created a permanent exemption from the permit program for pollutants discharged from water transfers:

> The following discharges do not require . . . permits: . . . (i) Discharges from a water transfer. Water transfer means an activity that conveys or connects waters of the United States without subjecting the transferred water to intervening industrial, municipal, or commercial use. This exclusion does not apply to pollutants

7

introduced by the water transfer activity itself to the water being transferred.

40 C.F.R. § 122.3(i). In the notice of final rule, the Administrator stated the position that "judicial review of the Administrator's action c[ould] only be had by filing a petition for review in the United States Court of Appeals within 120 days after the decision [wa]s considered issued for purposes of judicial review." 73 Fed. Reg. at 33,697.

Litigation ensued in two district courts. Several environmental organizations filed petitions to challenge the rule in the Southern District of New York. Nine states and the province of Manitoba, Canada, filed a parallel suit in that court, which consolidated the actions. The Miccosukee Tribe and several other environmental organizations filed suit in the Southern District of Florida.

At the same time, the petitioners in those actions filed protective petitions for review in the Second Circuit and in this Circuit. The Judicial Panel on Multidistrict Litigation consolidated those petitions in this Court. See 28 U.S.C. § 2112(a)(3). We stayed the petitions during consideration of the appeal in Friends of the Everglades v. South Florida Water Management District. The Southern District of New York also stayed the actions in its court pending resolution of that appeal and of the consolidated protective petitions. Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA, 630 F. Supp. 2d 295, 308 (S.D.N.Y. 2009).

8

In 2009, we reviewed the injunction issued by the district court in the light of the Administrator's new water-transfer rule. Friends of the Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d at 1218. We explained that, even though "all of the existing precedent" would have supported the decision of the district court, we had to accord the newly issued water-transfer rule deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 103 S. Ct. 2778 (1984). Friends of the Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d at 1218, 1227–28. After applying the two-part test for Chevron deference, see 467 U.S. at 842–43, 103 S. Ct. at 2781–82, we concluded that the water-transfer rule was a reasonable interpretation of an ambiguous provision of the Clean Water Act and reversed the decision of the district court, Friends of the Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d at 1228. When the mandate issued in that appeal, the stay of these petitions expired.

## II. STANDARD OF REVIEW

"[W]e determine our subject matter jurisdiction de novo." Alexis v. U.S. Att'y Gen., 431 F.3d 1291, 1293 (11th Cir. 2005). "[T]he Court owes no deference to an agency's interpretation of a statute that defines this Court's subject matter jurisdiction." Sierra Club v. Leavitt, 355 F.Supp.2d 544, 548 (D.D.C. 2005) (citing Fox Television Stations, Inc. v. FCC, 280 F.3d 1027, 1038–39 (D.C. Cir.

9

2002)); see Adams Fruit Co. v. Barrett, 494 U.S. 638, 650, 110 S. Ct. 1384, 1391 (1990) (explaining that the delegation of power to an agency to administer a statute does not empower that agency to "regulate the scope of the judicial power vested by the statute").

## III.  DISCUSSION

"[T]he Courts of Appeals have jurisdiction for direct review only of those [Agency] actions specifically enumerated in 33 U.S.C. § 1369(b)(1)," City of Baton Rouge v. EPA, 620 F.2d 478, 480 (5th Cir. 1980), and the Administrator invokes the following two provisions of that section as providing jurisdiction over this matter:

> (1) Review of the Administrator's action . . . (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title, (F) in issuing or denying any permit under section 1342 of this title . . . may be had by any interested person in the Circuit Court of Appeals of the United States . . . ,

33 U.S.C. § 1369(b)(1).  The Administrator argues that we have jurisdiction under section 1369(b)(1)(E) because the water-transfer rule is "related to" a limitation on movements of water and establishes limitations on permit issuers.  The Administrator also argues that we have jurisdiction under section 1369(b)(1)(F) because the effect of a permanent exemption from the requirements of a permit is "functionally similar" to the issuance of a permit.

10

United States Sugar urges us to exercise hypothetical jurisdiction over this matter and deny the petitions on the merits. United States Sugar argues that a court must satisfy itself of its jurisdiction before addressing the merits of a case only when the issue involves jurisdiction under Article III of the Constitution. United States Sugar also argues that, when the issue involves statutory jurisdiction and the decision on the merits is foreordained, we have the discretion to conserve judicial resources and address the merits.

We divide our discussion in three parts. First, we explain why we lack jurisdiction under section 1369(b)(1)(E). Second, we explain why we also lack jurisdiction under section 1369(b)(1)(F). Third, we explain why we must reject the invitation of intervenor United States Sugar to exercise hypothetical jurisdiction.

*A. We Lack Jurisdiction Under Section 1369(b)(1)(E).*

Section 1369(b)(1)(E) grants original jurisdiction to the courts of appeals over "any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title." Id. § 1369(b)(1)(E). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. U.S. Tr., 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004) (internal quotation marks omitted). Because the water-transfer rule is neither an

11

effluent limitation nor a limitation promulgated under section 1311, 1312, 1316, or 1345, section 1369(b)(1)(E) cannot be the basis for our jurisdiction in this action.

The water-transfer rule is not an effluent limitation.  The Act defines "effluent limitation" as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance." 33 U.S.C. § 1362(11).  Not only does the water-transfer rule not restrict pollutants, it explicitly allows entities to introduce pollutants into navigable bodies of water. See 40 C.F.R. § 122.3.

The water-transfer rule is also not a "limitation under section 1311, 1312, 1316, or 1345."  Black's Law Dictionary defines a "limitation" as a "restriction." Black's Law Dictionary 1012 (9th ed. 2009).  The water-transfer rule imposes no restrictions on entities engaged in water transfers.  The effect is the opposite: the rule exempts governments and private parties engaged in water transfers from the procedural and substantive requirements of the Administrator's permit program.

And even if the water-transfer rule could be classified as a limitation, it was not promulgated under section 1311, 1312, 1316, or 1345.  According to the notice of final rule, the Administrator promulgated the rule under sections 1342 and 1361.

12

73 Fed. Reg. at 33,698. The Administrator now argues that the water-transfer rule was promulgated under section 1311 because section 1311 refers to section 1342, but nothing in the text of section 1311 grants authority to the Administrator to exempt activities from the permit program. See 33 U.S.C. § 1311. Section 1311 instead grants the Administrator authority to issue and terminate permits. Id.

The analysis of the Ninth Circuit in Northwest Environmental Advocates v. EPA, 537 F.3d 1006 (9th Cir. 2008), is instructive. In an appeal from a district court, the Ninth Circuit was asked to review a different, but analogous, exemption from the permit program. Id. at 1010. Although the district court had exercised federal question jurisdiction, 28 U.S.C. § 1331, the Ninth Circuit considered whether the matter should have been brought directly to the court of appeals under section 1369(b)(1). Nw. Envtl. Advocates, 537 F.3d at 1015. The Ninth Circuit held that section 1369(b)(1)(E) did not permit it to exercise original subject matter jurisdiction because the challenged provision "provide[d] no limitation whatsoever . . . but rather create[d] the categorical and permanent exemptions of three types of discharge from any limit imposed by a permitting requirement." Id. at 1016.

The Administrator argues that we have jurisdiction because the water-transfer rule places limitations on permit issuers, and the Administrator relies on

13

Natural Resources Defense Council, Inc. v. EPA, 673 F.2d 400 (D.C. Cir. 1982), for the proposition that such limitations fall within section 1369(b)(1)(E). In that case, the D.C. Circuit held that it had original subject matter jurisdiction under section 1369(b)(1)(E) to review the consolidated permit regulations of 1979. Id. at 401–02. The D.C. Circuit explained that the consolidated permit regulations were "a limitation on point sources and permit issuers," much like regulations that the Fourth Circuit had previously held to support original jurisdiction under section 1369(b)(1)(E). Id. at 405 (quoting Va. Elec. & Power Co. v. Costle, 566 F.2d 446, 450 (4th Cir. 1977)). But the Fourth Circuit and the D.C. Circuit both emphasized that the limitations on permit issuers in those regulations operated as "restriction[s] on the untrammeled discretion of the industry." See id. at 404–05 (quoting Va. Elec., 556 F.2d at 450).

We reject the Administrator's reading of section 1369(b)(1)(E). The water-transfer rule does the exact opposite of the regulations reviewed by the D.C. and Fourth Circuits. The rule frees the industry from the constraints of the permit process and allows the discharge of pollutants from water transfers. Section 1369(b)(1)(E) cannot be read to grant us original subject matter jurisdiction over this matter.

14

*B. We Lack Jurisdiction Under Section 1369(b)(1)(F).*

The arguments advanced by the Administrator for jurisdiction under section 1369(b)(1)(F) fare no better. Section 1369(b)(1)(F) grants original subject matter jurisdiction over a petition to review an action "issuing or denying any permit under section 1342." 33 U.S.C. 1369(b)(1)(F). The water-transfer rule neither issues nor denies a permit. The rule instead exempts a category of activities from the requirements of a permit and ensures that no permit will ever be issued or denied for discharge from a water transfer. See 40 C.F.R. § 122.3(i).

The Supreme Court has interpreted section 1369(b)(1)(F) to extend jurisdiction to those actions that have "the precise effect" of an action to issue or deny a permit, Crown Simpson Pulp Co. v. Costle, 445 U.S. 193, 196, 100 S. Ct. 1093, 1095 (1980), but the water-transfer rule has no such effect. In Crown Simpson, the Administrator had denied several variances from effluent limitations that had been approved by the California State Water Resources Control Board. Id. at 195, 100 S. Ct. at 1094. Because California administered its own permit program, the Administrator had vetoed a proposed state permit, not denied a federal permit. Id. The Supreme Court was unwilling to create a bifurcated system for review that depended on whether a state administered the permit program, and the Court held that, when the action of the Administrator is

15

functionally similar to the denial or issuance of a permit, the courts of appeals have original subject matter jurisdiction under section 1369(b)(1)(F). Id. at 196, 100 S. Ct. at 1094. But a permanent exemption is meaningfully different from the action that the Supreme Court held in Crown Simpson to be functionally similar to the denial of a permit. The exemption is a general rule, as opposed to a decision about the activities of a specific entity, and a permanent exemption from the permit program frees the discharging entities from further monitoring, compliance, or renewal procedures.

The Administrator argues that we should read section 1369(b)(1)(F) to apply to any "regulations relating to permitting itself," but this interpretation is contrary to the statutory text and was persuasively rejected in Northwest Environmental Advocates. The Ninth Circuit held that it did not have jurisdiction under section 1369(b)(1)(F) to review a regulation creating new exemptions from the permit program. Nw. Envtl. Advocates, 537 F.3d at 1018. The Ninth Circuit explained that a new exemption will never produce a permit decision to be reviewed under section 1369(b)(1)(F) before the court of appeals is able to review the underlying regulation, so there is no reason to read the section as providing original subject matter jurisdiction to review the exemption. Id. Although the Sixth Circuit later adopted the interpretation advanced by the Administrator, Nat'l Cotton Council of

16

<u>Am. v. EPA</u>, 553 F.3d 927, 933 (6th Cir. 2009), it did so in an opinion that provided no analysis of the provision and that cited two decisions of the Ninth Circuit that the Ninth Circuit had distinguished in <u>Northwest Environmental Advocates</u>, <u>see</u> <u>id.</u>  We lack original jurisdiction to review a permanent exemption from the permit program.

### C. We Cannot Exercise Hypothetical Jurisdiction.

The argument of United States Sugar that we may exercise hypothetical jurisdiction fails.  Even if the resolution of the merits were foreordained—an issue we do not decide—the Supreme Court has explicitly rejected the theory of "hypothetical jurisdiction."  In <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 118 S. Ct. 1003 (1997), the Court reaffirmed that an inferior court must have both statutory and constitutional jurisdiction before it may decide a case on the merits:

> Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning.  Much more than legal niceties are at stake here.  The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects.  For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.

17

Id. at 101–02, 118 S. Ct. at 1016.  The Court recognized one exception to this requirement: when there is substantial overlap between interpreting a statute to resolve the merits of a case and determining an issue of statutory standing, a federal court has the power to decide whether a statute creates a cause of action before deciding whether the plaintiff has statutory standing to sue.  Id. at 97 n.2, 118 S. Ct. at 1013 n.2.  But here the statutory issue involves subject matter jurisdiction, not standing, and that issue is distinct from the merits.

We cannot exercise hypothetical jurisdiction any more than we can issue a hypothetical judgment.  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994) (internal citations omitted).  Because we conclude that section 1369(b)(1) does not grant original subject matter jurisdiction over these petitions, we may not address the merits of this controversy.

### IV.  CONCLUSION

We **DISMISS** the petitions for review for lack of subject matter jurisdiction.

18