[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13446

_____

D.C. Docket No. 8:19-cv-01954-TPB-AAS


KEILA ROSA CAMARENA,

                                        Plaintiff-Appellant,

versus

DIRECTOR, IMMIGRATION AND CUSTOMS ENFORCEMENT,
ERO Tampa Field Office,
SECRETARY, UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,
Acting Secretary,

                                        Defendants-Appellees.


_____

Appeals from the United States District Court
for the Middle District of Florida
_____


_____

No. 19-14331

_____

D.C. Docket No. 1:19-cv-24407-RNS

JAVIER BARRIOS,
LILIANA MARIELA PATO,

                                                    Plaintiffs-Appellants,


                              versus


ACT. SEC. DEPT. DHS KEVIN K. MCALEENAN,
in his official capacity as Acting Secretary of Homeland Security,
ACTING DIRECTOR MATTHEW T. ALBENCE,
in his official capacity as Acting Director, U.S. Immigration and Customs
Enforcement, et al.,

                                                    Defendants-Appellees.


                    _____


              Appeals from the United States District Court
                   for the Southern District of Florida
                    _____

                        (February 18, 2021)

Before WILSON, GRANT, and TJOFLAT, Circuit Judges.

GRANT, Circuit Judge:

        These consolidated appeals involve two immigrants who admit that they are

subject to valid removal orders.  Still, when the government moved to execute

those orders, they sued.  Both had applied for provisional unlawful presence

waivers; those waivers, if granted, would give them an easier time getting back

into the United States in the future.  They say that the government cannot remove

them just yet because that would interfere with their "regulatory rights" to remain

in the United States while they apply for the waivers.  But their applications do not

                                          2

give us jurisdiction to interfere with the execution of their removal orders. We therefore affirm the district courts' orders dismissing their petitions.

I.

A.

Keila Camarena, a native and citizen of the Dominican Republic, entered the United States on a tourist visa in March 2002. That visa authorized her to stay for only six months. But soon after her arrival, U.S. Citizenship and Immigration Services approved a change of status request and issued her an H1B1 visa. Her new H1B1 visa permitted her to remain in the United States until June 2005.

Three years after her departure deadline, Camarena—still in the United States—petitioned to become a permanent resident. When Citizenship and Immigration Services denied her petition, the Department of Homeland Security initiated removal proceedings against her. Those proceedings ended roughly four years later, when an immigration judge ordered her removed. Camarena never appealed that decision to the Board of Immigration Appeals and never petitioned this Court for review.

Instead of removing her immediately, Immigration and Customs Enforcement (ICE) issued her an order of supervision. That order required that she periodically check in at the agency's Tampa office. This arrangement lasted nearly six years, until the agency decided to execute her outstanding removal order, requiring that she depart the United States the next month.

But shortly before her final departure date, Camarena sought to stay her removal by filing a petition for writ of habeas corpus and an emergency motion for

3

a temporary restraining order. In her petition, she argues that she is "in the process of fixing her legal status" by seeking a provisional unlawful presence waiver. She contends that she has the right to remain in the United States while applying for that waiver. If approved, the waiver would relieve Camarena of a statutory bar on reentry that would otherwise apply to her.[1] *See* 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e).

The district court dismissed Camarena's petition, concluding that it lacked subject matter jurisdiction over her claims. She appealed, and we stayed her removal pending appeal.

## B.

Javier Barrios is a native and citizen of Argentina. He entered the United States in December 2001 under a visa waiver program. *See* 8 U.S.C. § 1187. He has remained in the United States since then despite being authorized to stay only a few months.

In 2009, ICE detained Barrios and ordered him removed under 8 C.F.R. § 217.4(b). But it did not immediately remove him. Instead, Barrios remained in the United States under an order of supervision. But ten years later, the agency advised Barrios that it was executing his removal order, and that he must depart the United States within a few months.

---

[1] Individuals who have been unlawfully present in the United States for more than 180 days but less than a year are inadmissible for three years. 8 U.S.C. § 1182(a)(9)(B)(i)(I). And those unlawfully present for one year or more are inadmissible for ten years. *Id.* § 1182(a)(9)(B)(i)(II). But the Secretary of Homeland Security may, in his discretion, waive that bar in certain circumstances. *See id.* § 1182(a)(9)(B)(v); 6 U.S.C. §§ 202, 291, 557.

The day before he was required to depart, however, Barrios filed a habeas petition and an emergency motion to halt the execution of his removal order. Like Camarena, he contends that he has the right to remain in the United States while he applies for a provisional unlawful presence waiver. And like in Camarena's case, the district court concluded that it lacked jurisdiction over his claim. It therefore denied his emergency motion. He appealed, and we stayed his removal pending appeal.

II.

We review de novo a district court's dismissal for lack of subject matter jurisdiction. *See Bejacmar v. Ashcroft*, 291 F.3d 735, 736 (11th Cir. 2002).

III.

As the familiar maxim goes, federal courts are "courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). After all, we "possess only that power authorized by Constitution and statute." *Id.* For that reason, we "cannot extend the court's hand to seize topics Congress has put beyond our reach." *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 546 (11th Cir. 2019).

One such jurisdiction-stripping provision is 8 U.S.C. § 1252(g). Section 1252(g) bars federal courts from hearing "any cause or claim" by an alien "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." It is a "discretion-protecting provision" designed to prevent the "deconstruction, fragmentation, and hence

prolongation of removal proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

Of course, § 1252(g) does not cover "the universe of deportation claims." *Id.* at 482. It is not a "shorthand way of referring to all claims arising from deportation proceedings." *Id.* Nor does § 1252(g) impose a "general jurisdictional limitation." *Id.* As the Supreme Court has explained, § 1252(g) lists just three "discrete actions": actions to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* And although "many other decisions or actions" may be "part of the deportation process," only claims that arise from one of the covered actions are excluded from our review (at least by this provision). *Id.*

But when does a claim arise from one of the three covered actions? The Supreme Court has answered that too, cautioning us against interpreting § 1252(g)'s "arising from" language broadly. *See id.* This approach ensures that § 1252(g)'s jurisdictional bar does not "sweep in any claim that can technically be said to 'arise from' the three listed actions." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). And that means that § 1252(g) bars only those claims that directly relate to the "three specific actions" it lists. *Id.*; *see also Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (no jurisdiction when one of the three listed actions is the "basis of the claim").

With that understanding, we turn to the appeal at hand. Here, Camarena and Barrios's claims arise from the government's "decision or action" to "execute" their removal orders. 8 U.S.C. § 1252(g). As we noted above, the government told Camarena and Barrios that it was executing their removal orders, and that they

6

must depart the country by a specified date.  In response, the two filed habeas petitions seeking to halt their removal while they apply for provisional unlawful presence waivers.  When "asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020).  Here, that action is the government's execution of the petitioners' removal orders.  That means their claims fall squarely within § 1252(g)'s jurisdictional bar.

Even so, Camarena and Barrios argue that we retain jurisdiction because, as they see it, they are challenging the government's underlying authority to execute those orders, rather than its discretion to do so.  They contend that the waiver process contains within it a "regulatory right" to remain until that process is resolved.  And if they have a regulatory right to stay, they say, then the government has no authority to remove them.[2]

But this argument runs headlong into § 1252(g).  The bottom line is that § 1252(g) strips us of jurisdiction to hear the claims brought by Camarena and Barrios, and that statute does not offer any discretion-versus-authority distinction of the sort they claim.  The statute's words make that clear.  One word in particular

_____

[2] One problem is that they do not point to any regulation conferring such a right, and a brief review of regulatory authorities suggests the opposite.  For example, one regulation notes that "a pending or approved provisional unlawful presence waiver" does not grant a "period of stay authorized by the Secretary."  8 C.F.R. § 212.7(e)(2)(i).  And more to the point, when adding that language to the regulation, the government rejected the very argument advanced here, stating that "the filing or approval of a provisional unlawful presence waiver application" does not "protect an alien from being placed in removal proceedings or removed from the United States."  Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536, 536, 555 (Jan. 3, 2013) (codified at 8 C.F.R. pts. 103, 212).  But implausibility is not the real trouble with their argument.  Because we are considering a jurisdictional question, the merit of the challenge is beside the point.

stands out: "any." Section 1252(g) bars review over "any" challenge to the execution of a removal order—and makes no exception for those claiming to challenge the government's "authority" to execute their removal orders. 8 U.S.C. § 1252(g); *see also E.F.L. v. Prim*, --- F.3d ---, No. 20-1200, 2021 WL 244606, at *4 (7th Cir. Jan. 26, 2021). No matter how much petitioners urge us to, "we may not engraft our own exceptions onto the statutory text." *Bourdon*, 940 F.3d at 547 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)).

Still, Camarena and Barrios point to *Madu v. U.S. Attorney General* as evidence that we retain jurisdiction to consider their challenges to the government's "authority to remove them." *See* 470 F.3d 1362 (11th Cir. 2006). In that case, we said that we were permitted to review Madu's removal despite § 1252(g) because Madu was challenging the "underlying legal bases" of his removal. *Id.* at 1368. Camarena and Barrios say that they are just asking us to do the same here by alleging that the government lacks the authority to remove them while they complete the waiver process—and that federal courts therefore have jurisdiction over their claims.

But their reliance on *Madu* is misplaced. The question presented by Madu's habeas petition was not whether the government had the authority to execute a removal order, but whether there was any removal order at all. *Id.* at 1367–68. In other words, Madu's claim was that the government could not detain or remove him because it did not even have a removal order to execute. *Id.* It is hard to see

how the government could "execute" a removal order that does not exist, which means it is no surprise that § 1252(g) did not block that challenge.

Yet here no one disputes the validity—or the existence—of the petitioners' removal orders. Nor do they dispute that those orders provide the government "statutory grounds" to remove them. *Cf. Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1205 (11th Cir. 2016). Instead, Camarena and Barrios argue that a separate regulatory process should be interpreted to block their removal from the United States, at least for now. Those claims are nothing like the ones we considered in *Madu*. That case spoke to a narrow set of circumstances; in fact, we have not had reason to apply *Madu*'s § 1252(g) holding in the decade and a half since it was published. And that is despite the wide variety of collateral attacks on the government's "authority" to remove that could survive if we construed its holding as broadly as Camarena and Barrios ask. *See, e.g., Prim*, 2021 WL 244606, at *4 (no jurisdiction over claim seeking to stop removal while Violence Against Women Act self-petition was pending). The statute simply doesn't allow for it.

In short, no matter how Camarena and Barrios characterize their claims, they amount to an attack on the government's execution of their removal orders. That runs afoul of § 1252(g): we do not have jurisdiction to consider "any" cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order. *See Prim*, 2021 WL 244606, at *4. And that sleight

9

of hand would gut the jurisdictional limits set by Congress. *See id.*; *cf. Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc) (noting that "a party may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction"). Instead, we respect those limits.

*    *    *

Because we conclude that Congress stripped federal courts of jurisdiction over these claims, we **AFFIRM** the district courts' dismissals.

WILSON, Circuit Judge, concurring:

I understand Keila Camarena's and Javier Barrios's efforts to avail themselves of the Department of Homeland Security provisional waiver process. The waiver process allows select noncitizens who are unlawfully present and otherwise ineligible for adjustment of status to legalize their status through orderly self-deportation prior to their immigrant visa interview at a U.S. consulate abroad. *See* 8 C.F.R. § 212.7(e). This process allows them to request the waiver before self-deporting and await the processing of their application in the U.S.—thereby minimizing the time they are separated from their family. Nevertheless, the law here is not on their side, so I concur in the judgment.

11