In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 21-3160
ILLYA BRITKOVYY,
 Plaintiﬀ-Appellant,
 v.

ALEJANDRO MAYORKAS, Secretary of
Homeland Security, and KAY LEOPOLD,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court for the
 Eastern District of Wisconsin.
 No. 18-cv-718 — Nancy Joseph, Magistrate Judge.
 ____________________

 ARGUED AUGUST 3, 2022 — DECIDED FEBRUARY 17, 2023
 ____________________

 Before SYKES, Chief Judge, and SCUDDER and ST. EVE, Circuit
Judges.
 ST. EVE, Circuit Judge. Illya Britkovyy is a Ukrainian citizen
who hopes to become a lawful permanent resident of the
United States. He applied to the U.S. Citizenship and Immi-
gration Services (“USCIS”) to adjust his immigration status,
but USCIS denied his application, a decision Britkovyy argues
was legally erroneous. The immigration statutes do not
2 No. 21-3160

provide for judicial review of this denial, so Britkovyy ﬁled
this suit under the Administrative Procedure Act (“APA”), 5
U.S.C. §§ 701–706. For the reasons stated below, we hold that
we lack jurisdiction to hear this case.
 I. Background
 In 2000, Britkovyy entered the United States on foot
through Tijuana, Mexico. A U.S. immigration inspector twice
asked for Britkovyy’s country of citizenship, and each time
Britkovyy replied that he was born in the United States. The
following day, Britkovyy—with the assistance of an inter-
preter—explained that he had misunderstood the inspector’s
question, that he was Ukrainian, and that he had not claimed
to be a U.S. citizen. Britkovyy was paroled into the United
States—allowed to enter temporarily but not “admitted” to
the country, see 8 U.S.C. § 1101(a)(13)—and charged as inad-
missible in immigration court for falsely representing himself
as a U.S. citizen. Britkovyy did not appear at his removal hear-
ing, so an immigration judge (“IJ”) ordered him removed in
absentia. Britkovyy never left the country and later married a
U.S. citizen. In 2007, a police oﬃcer discovered Britkovyy’s
outstanding immigration warrant during a traﬃc stop and
turned him over to Immigration and Customs Enforcement.
 Britkovyy successfully moved to reopen his removal pro-
ceedings in immigration court. In 2009, his wife petitioned for
family-based permanent residency for Britkovyy. He then ap-
plied to adjust his immigration status to lawful permanent
resident with both the immigration court and with USCIS, a
separate agency. For diﬀerent reasons, neither the immigra-
tion court nor USCIS granted his application.
No. 21-3160 3

 The IJ overseeing Britkovyy’s removal proceedings deter-
mined that the immigration court lacked jurisdiction over the
adjustment-of-status application. Regulations give USCIS ex-
clusive jurisdiction to adjust the status of an “arriving alien,”
8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1), and Britkovyy is an arriv-
ing alien because he was paroled, not admitted, to the United
States. See 8 C.F.R. § 1001.1(q). Thus, the immigration court
could not consider Britkovyy’s adjustment-of-status applica-
tion. At the parties’ request, the IJ administratively closed the
case in March 2012 to await USCIS’s decision.
 A month later, USCIS denied Britkovyy’s application on
the merits. It found that he was inadmissible because he had
falsely claimed to be a U.S. citizen with the intent of entering
the country, which made him ineligible for adjustment of sta-
tus. See 8 U.S.C. §§ 1182(a)(6)(C)(ii), 1255(a). Britkovyy moved
USCIS to reopen and reconsider his application, but in 2018
USCIS denied the motion. Because USCIS had made a ﬁnal
decision denying Britkovyy’s adjustment-of-status applica-
tion, the immigration court reopened the removal proceed-
ings. That case remains pending and may result in the IJ or-
dering Britkovyy removed from the United States.
 In an attempt to receive judicial review of USCIS’s denial
of his application, Britkovyy sued USCIS under the APA. He
argued that the denial was reviewable under 5 U.S.C. § 704,
and he asked the court to set aside USCIS’s decision under
§ 706(2)(A). The magistrate judge, presiding by consent, con-
cluded that 8 U.S.C. § 1252(a)(2)(B)(i)—which governs judi-
cial review of removal orders and denials of discretionary re-
lief from removal—deprived the court of jurisdiction to re-
view USCIS’s decision because it was a discretionary judg-
ment. Britkovyy appealed, and the parties jointly moved to
4 No. 21-3160

remand, arguing that under Morales-Morales v. Ashcroft, 384
F.3d 418 (7th Cir. 2004), and Iddir v. I.N.S., 301 F.3d 492 (7th
Cir. 2002), Britkovyy had raised a reviewable question about
the application of a nondiscretionary “statutory ineligibility
bar.” We granted the motion and remanded the case. The
magistrate judge then considered Britkovyy’s claim on the
merits and granted summary judgment in favor of USCIS be-
cause the denial of Britkovyy’s adjustment-of-status applica-
tion did not violate § 706(2)(A). Britkovyy appealed again.
 While his appeal was pending, the Supreme Court de-
cided Patel v. Garland, holding that 8 U.S.C. § 1252(a)(2)(B)(i)
strips federal courts of “jurisdiction to review facts found as
part of discretionary-relief proceedings under § 1255,” which
governs adjustment of status. 142 S. Ct. 1614, 1627 (2022). The
parties in Patel argued that this reading of § 1252(a)(2)(B)(i)
would “have the unintended consequence of precluding all
review of USCIS denials of discretionary relief.” Id. at 1626.
That question was not at issue in Patel, so the Court did not
decide it, but the Court observed that “it is possible that Con-
gress did, in fact, intend to close that door.” Id. Resolving this
appeal requires us to determine whether § 1252(a)(2)(B)(i)
precludes judicial review of adjustment-of-status denials by
USCIS, so we ordered supplemental brieﬁng—and accepted a
brief from the National Immigrant Justice Center (the “Cen-
ter”) as amicus curiae—on the eﬀect of Patel on our jurisdic-
tion.
 II. Discussion
 Congress provides for judicial review of many administra-
tive agency actions in agency-speciﬁc statutes, but agency ac-
tion not otherwise reviewable may be reviewable under the
APA. The APA provides that “ﬁnal agency action for which
No. 21-3160 5

there is no other adequate remedy in a court [is] subject to ju-
dicial review,” 5 U.S.C. § 704, and it instructs courts to “hold
unlawful and set aside agency action, ﬁndings, and conclu-
sions found to be … arbitrary, capricious, an abuse of discre-
tion, or otherwise not in accordance with law ….” § 706(2)(A).
But Congress has sharply limited judicial review in the immi-
gration context, and “the APA’s general provision authoriz-
ing judicial review of ﬁnal agency actions must yield to … im-
migration-speciﬁc limitations.” Dijamco v. Wolf, 962 F.3d 999,
1003 (7th Cir. 2020) (citing Bultasa Buddhist Temple of Chi. v.
Nielsen, 878 F.3d 570, 574 (7th Cir. 2017)). We must therefore
determine whether an immigration-speciﬁc provision pre-
vents Britkovyy from using the APA to challenge the denial
of his adjustment-of-status application. We hold that 8 U.S.C.
§ 1252(a)(2)(B)(i) does just that.
A. Statutory and Regulatory Framework
 Noncitizens present in the United States are removable if
they fall within one of the categories listed in 8 U.S.C. § 1227,
including “[a]ny alien who at the time of entry … was … in-
admissible ….” § 1227(a)(1)(A). Section 1182, in turn, enumer-
ates the reasons why a noncitizen can be inadmissible, such
as “falsely represent[ing] … himself … to be a citizen of the
United States for any purpose or beneﬁt under” the immigra-
tion laws. § 1182(a)(6)(C)(ii)(I).
 IJs conduct removal proceedings in immigration court,
with review by the Board of Immigration Appeals and the
federal courts of appeals. See §§ 1229a, 1252(b); 8 C.F.R.
§§ 1240.1, 1240.15. A noncitizen ordered removed by an IJ
may be eligible for several forms of discretionary relief from
removal. The relief at issue here is adjustment to lawful per-
manent resident status pursuant to 8 U.S.C. § 1255. In general,
6 No. 21-3160

noncitizens can seek adjustment of status during removal
proceedings, 8 C.F.R. § 1245.2(a)(1)(i), but regulations give
USCIS exclusive jurisdiction over adjustment-of-status appli-
cations ﬁled by arriving aliens. See 8 C.F.R. §§ 245.2(a)(1),
1245.2(a)(1)(i)–(ii). Britkovyy is an arriving alien because he
was paroled into the United States, so by regulation, only
USCIS, not the immigration courts, can adjust his status.
 The basis for judicial review of immigration decisions, in-
cluding orders of removal (entered by immigration courts)
and denials of adjustment-of-status applications (for arriving
aliens, entered by USCIS), is 8 U.S.C. § 1252. Our power to re-
view orders of removal is quite limited, and our review of de-
nials of discretionary relief—such as adjustment of status—is
even more so.
 Section 1252 prescribes the procedure for judicial review
of ﬁnal orders of removal and otherwise strips courts of juris-
diction to review orders of removal and denials of discretion-
ary relief. See § 1252(a)–(b). The jurisdiction-stripping provi-
sion, § 1252(a)(2)(B), provides, in relevant part:
 (B) Denials of discretionary relief
 Notwithstanding any other provision of law (statutory
 or nonstatutory), … and except as provided in subpar-
 agraph (D), and regardless of whether the judgment,
 decision, or action is made in removal proceedings, no
 court shall have jurisdiction to review—
 (i) any judgment regarding the granting of relief
 under section 1182(h), 1182(i), 1229b, 1229c, or 1255
 of this title ….
But § 1252(a)(2)(D) preserves judicial review in a narrow set
of circumstances:
No. 21-3160 7

 (D) Judicial review of certain legal claims
 Nothing in subparagraph (B) … shall be construed as
 precluding review of constitutional claims or questions
 of law raised upon a petition for review ﬁled with an
 appropriate court of appeals in accordance with this
 section.
Taken together, these provisions provide for judicial review
only of legal and constitutional claims and only if those claims
are brought in a petition for review from a ﬁnal order of re-
moval. Because § 1255, which governs adjustment-of-status
applications, is listed in § 1252(a)(2)(B)(i), a noncitizen can re-
ceive judicial review of a denial of adjustment of status only
through a petition for review from a ﬁnal order of removal,
and even then, only for constitutional claims or questions of
law.
 The result is that § 1252(a)(2)(B)(i) operates to eliminate ju-
dicial review of the denial of an adjustment-of-status applica-
tion by USCIS. Recall that USCIS has exclusive jurisdiction to
adjudicate an arriving alien’s adjustment-of-status applica-
tion, 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(i)–(ii), and that only
the immigration courts conduct removal proceedings. 8
U.S.C. § 1229a. The plain text of § 1252(a)(2)(B)(i) precludes
judicial review of the denial of Britkovyy’s adjustment-of-sta-
tus application, and § 1252(a)(2)(D) is inapplicable because
Britkovyy has not received a ﬁnal order of removal. Thus,
§ 1252(a)(2)(B)(i) is an immigration-speciﬁc jurisdictional lim-
itation that trumps the APA’s general grant of judicial review
and deprives the federal courts of jurisdiction over this case.
See Dijamco, 962 F.3d at 1003.
8 No. 21-3160

B. Patel v. Garland
 Patel v. Garland further supports the conclusion that
§ 1252(a)(2)(B)(i) prevents a noncitizen from using the APA to
challenge an adjustment-of-status denial by USCIS. In Patel,
the Supreme Court considered whether § 1252(a)(2)(B)(i) pre-
cludes judicial review of “factual ﬁndings that underlie a de-
nial of relief” and concluded that it does. 142 S. Ct. at 1618,
1627. The Court’s decision turned on the interpretation of
“judgment” in the phrase “any judgment regarding the grant-
ing of relief.” § 1252(a)(2)(B)(i). The Court rejected the argu-
ment that “judgment” refers only to discretionary decisions
or the ultimate denial of relief. Patel, 142 S. Ct. at 1622–26. In-
stead, it held that “judgment” in this provision means “any
authoritative decision.” Id. at 1621–22. “Under this broad def-
inition, § 1252(a)(2)(B)(i)’s prohibition ‘encompasses any and
all decisions relating to the granting or denying’ of discretion-
ary relief,” including factual ﬁndings. Id. at 1621.
 The Court also rejected the policy-based argument that its
reading “would arbitrarily prohibit review of some factual
determinations made in the discretionary-relief context that
would be reviewable if made elsewhere in removal proceed-
ings.” Id. at 1626. This distinction was not arbitrary, the Court
explained, because “[i]t reﬂects Congress’ choice to provide
reduced procedural protection for discretionary relief,”
which is “‘a matter of grace.’” Id. (quoting I.N.S. v. St. Cyr, 533
U.S. 289, 308 (2001)). The Court acknowledged in dicta that its
reading of § 1252(a)(2)(B)(i) might preclude all judicial review
of denials of discretionary relief by USCIS because those de-
cisions are not made in the removal context. This possibility
did not warrant a diﬀerent reading of the statute, though, be-
cause “foreclosing judicial review unless and until removal
No. 21-3160 9

proceedings are initiated would be consistent with Congress’
choice to reduce procedural protections in the context of dis-
cretionary relief.” Id. at 1626–27 (citation omitted). And ulti-
mately, whether the Court’s reading of § 1252(a)(2)(B)(i)
would have this eﬀect did not matter because “policy con-
cerns cannot trump the best interpretation of the statutory
text.” Id. at 1627 (citations omitted).
 Finally, the Court rejected the argument that the statute
was suﬃciently ambiguous to trigger the presumption that
agency action is reviewable. The Supreme Court has recog-
nized a “‘presumption favoring judicial review of administra-
tive action’ … when a statutory provision ‘is reasonably sus-
ceptible to divergent interpretation ….’” Guerrero-Lasprilla v.
Barr, 140 S. Ct. 1062, 1069 (2020) (quoting Kucana v. Holder, 558
U.S. 233, 251 (2010)). There must be “‘clear and convincing ev-
idence’ of congressional intent to preclude judicial review” to
overcome the presumption. Id. (quoting Reno v. Cath. Soc.
Servs., Inc., 509 U.S. 43, 64 (1993)). In Patel, the Court held that
“the text and context of § 1252(a)(2)(B)(i) … clearly indicate
that judicial review of fact determinations is precluded in the
discretionary-relief context,” so it saw “no reason to resort to
the presumption of reviewability.” 142 S. Ct. at 1627.
 While Patel does not resolve the question presented in this
appeal, its reasoning supports the conclusion that judicial re-
view is unavailable. Neither policy-based arguments nor the
presumption of reviewability can overcome the plain lan-
guage of § 1252(a)(2)(B)(i). Patel, 142 S. Ct. at 1626–27. As ex-
plained above, that provision’s plain language strips us of ju-
risdiction to review denials of relief by USCIS under § 1255.
10 No. 21-3160

C. Additional Arguments
 Britkovyy and the Center oﬀer several reasons why we
should not interpret the plain language of § 1252(a)(2)(B)(i) as
an immigration-speciﬁc bar that precludes APA review of an
adjustment-of-status denial by USCIS. We ﬁnd none of their
arguments convincing.
 1. The Presumption of Reviewability
 Although the Supreme Court in Patel found that the pre-
sumption that agency action is reviewable did not apply be-
cause § 1252(a)(2)(B)(i) was an unambiguous bar on judicial
review, the Center urges us to reach the opposite conclusion
here. It argues that “the bar relates to ‘the granting of relief,’
as opposed to judgments about relief eligibility or how to con-
strue the statute,” which implies that the bar “is intended to
apply to particular applications, such as the claim under re-
view in Patel.”
 We disagree. As the Supreme Court has made clear, a stat-
ute must be ambiguous for the presumption of reviewability
to apply. Guerrero-Lasprilla, 140 S. Ct. at 1069. Here, the statute
is clear:
 Notwithstanding any other provision of law (statutory or
 nonstatutory), including section 2241 of title 28, or any
 other habeas corpus provision, and sections 1361 and
 1651 of such title, and except as provided in subpara-
 graph (D), and regardless of whether the judgment, deci-
 sion, or action is made in removal proceedings, no court
 shall have jurisdiction [except as provided herein] ….
§ 1252(a)(2)(B) (emphases added). If that language were not
clear enough to establish that we lack jurisdiction to review
USCIS’s decision, surrounding provisions would drive that
No. 21-3160 11

conclusion home. For example, another provision in the juris-
diction-stripping subsection states:
 Notwithstanding any other provision of law (statutory
 or nonstatutory), including section 2241 of title 28, or
 any other habeas corpus provision, and sections 1361
 and 1651 of such title, a petition for review ﬁled with
 an appropriate court of appeals in accordance with this
 section shall be the sole and exclusive means for judi-
 cial review of an order of removal entered or issued
 under any provision of this chapter, except as provided
 in subsection (e). For purposes of this chapter, in every
 provision that limits or eliminates judicial review or ju-
 risdiction to review, the terms “judicial review” and
 “jurisdiction to review” include habeas corpus review
 pursuant to section 2241 of title 28, or any other habeas
 corpus provision, sections 1361 and 1651 of such title,
 and review pursuant to any other provision of law (stat-
 utory or nonstatutory).
§ 1252(a)(5) (emphases added). Congress’s intent to preclude
judicial review other than through the process outlined in
§ 1252 is clear.
 The Center’s reliance on McNary v. Haitian Refugee Center,
Inc., 498 U.S. 479 (1991), and Reno v. Catholic Social Services,
Inc., 509 U.S. 43 (1993), does not compel a diﬀerent result. Both
of those cases involved challenges that fell outside the scope
of the jurisdiction-stripping provision. In McNary, the Court
interpreted a statute barring review “of a determination re-
specting an application,” § 1160(e)(1) (emphases by the Court),
not to prevent courts from hearing “general collateral chal-
lenges to unconstitutional practices and policies used by the
agency in processing applications,” which did not concern a
12 No. 21-3160

particular determination with respect to a speciﬁc applica-
tion. 498 U.S. at 491–92. Reno involved similar language,
which barred judicial review of “a determination respecting
an application for adjustment of status under this section ex-
cept in accordance with this subsection.” § 1255a(f)(1). The
Court held that this provision did not bar judicial review over
an agency policy that “may well have placed some [plaintiﬀs]
outside the scope of” the limited judicial review authorized
by § 1255a(f)(1) because the statute did not demonstrate that
Congress used “determination” broadly enough to eliminate
judicial review of this agency policy. 509 U.S. at 61, 64. In con-
trast to McNary and Reno, Britkovyy falls squarely within the
scope of the jurisdictional bar because he challenges a “judg-
ment regarding the granting of relief under section … 1255.”
§ 1252(a)(2)(B)(i).
 The statutory language demonstrates clear congressional
intent to strip our jurisdiction to review claims like this one,
so Britkovyy cannot rely on the presumption of reviewability
to circumvent § 1252(a)(2)(B)(i)’s plain language.
 2. REAL ID Act Congressional Report
 Britkovyy argues that a report accompanying the REAL ID
Act, Pub. L. No. 109-13, 119 Stat. 302 (2005), supports his po-
sition. The REAL ID Act amended § 1252 to bar review of
judgments regardless of whether they were made in removal
proceedings, and the accompanying report explains that “the
overall eﬀect of the proposed reforms [was] to give every alien
a fair opportunity to obtain judicial review.” H.R. Conf. Rep.
No. 109-72, at 174 (2005). Britkovyy reads this statement as a
reﬂection of congressional intent not to bar judicial review of
USCIS decisions. But Britkovyy’s reliance on this report is
misplaced because “when the meaning of the statutory text is
No. 21-3160 13

clear, we do not ‘venture into legislative history.’” Singh v. Ses-
sions, 898 F.3d 720, 725–26 (7th Cir. 2018) (internal alteration
omitted) (quoting In re Bronk, 775 F.3d 871, 876 (7th Cir.
2015)). *
 3. Inconsistent Treatment of T-Visa and U-Visa Holders
 Next, Britkovyy argues that holding that § 1252(a)(2)(B)(i)
bars review of adjustment-of-status denials by USCIS would
frustrate Congress’s intent to treat T- and U-Visa holders fa-
vorably. These visas are available to victims of human traf-
ﬁcking (T Visas) and victims of serious crimes (U Visas),
§ 1101(a)(15)(T)–(U), and they oﬀer holders a path to perma-
nent residency. § 1255(l)–(m). By regulation, USCIS has exclu-
sive jurisdiction over adjustment-of-status applications ﬁled
by T- and U-Visa holders, just as it does over applications ﬁled
by arriving aliens such as Britkovyy. 8 C.F.R. §§ 245.23(d),
245.24(f). Britkovyy argues that “Congress has viewed assign-
ment of adjustment of status applications to USCIS as a bene-
ﬁcial treatment aﬀorded to particularly vulnerable nonciti-
zens” and that reading § 1252(a)(2)(B)(i) to deny judicial re-
view to these individuals would be inconsistent with this in-
tent.

 * Even if we were to consider the report, it would not help Britkovyy.

The statement he relies on refers primarily to “criminal aliens,” for whom
judicial review is governed by a diﬀerent jurisdiction-stripping provision,
§ 1252(a)(2)(C). And according to the report, the aim of the REAL ID Act
amendments was to “restore[]” judicial review, a goal that Congress
achieved through § 1252(a)(2)(D), permitting courts to review legal and
constitutional questions raised in a petition for review. The report does
not reﬂect congressional intent to provide judicial review of USCIS’s deci-
sion here, which falls outside the scope of § 1252(a)(2)(D).
14 No. 21-3160

 These arguments are nonstarters because they are based
in public policy, and “policy concerns cannot trump the best
interpretation of the statutory text.” Patel, 142 S. Ct. at 1627
(citations omitted). Moreover, the Supreme Court has indi-
cated that the plain meaning of § 1252(a)(2)(B)(i)—stripping
our jurisdiction to review adjustment-of-status denials by
USCIS—is “consistent with Congress’ choice to reduce proce-
dural protections in the context of discretionary relief.” Id. at
1626–27 (citation omitted). If Congress wishes to provide ar-
riving aliens, T-Visa holders, and U-Visa holders with judicial
review in this context, it may do so. It is not our place to ele-
vate policy considerations above statutory text.
 4. Regulatory Jurisdiction-Stripping
 Finally, the Center argues that we have jurisdiction be-
cause regulation, not statute, gives USCIS exclusive authority
over arriving aliens’ adjustment-of-status applications, and
administrative agencies should not be able to expand or con-
tract the availability of judicial review. In Kucana v. Holder, the
Supreme Court reversed our decision holding that
§ 1252(a)(2)(B)(ii) eliminated judicial review of decisions that
regulation, rather than statute, made discretionary. The Court
noted that under our interpretation of § 1252(a)(2)(B)(ii), “the
Executive would have a free hand to shelter its own decisions
from … appellate court review simply by issuing a regulation
declaring those decisions ‘discretionary,’” but “[s]uch an ex-
traordinary delegation of authority [could not] be extracted
from the statute Congress enacted.” 558 U.S. at 251–52. The
Center argues that the same situation exists here. Regulation,
not statute, gives USCIS exclusive jurisdiction over certain ad-
justment-of-status applications. Allowing those regulations to
No. 21-3160 15

stand would “that give[] the agency a ‘free hand’ to insulate
its decisions from review.”
 This argument may have merit, but we cannot entertain it
here. We lack jurisdiction to review USCIS’s decision pursu-
ant to § 1252(a)(2)(B)(i), a statute, not a regulation, so the
problem identiﬁed in Kucana does not arise in this case. Ra-
ther, the potential problem of regulatory jurisdiction-strip-
ping arises from the IJ’s conclusion that 8 C.F.R. §§ 245.2(a)(1)
and 1245.2(a)(1) strip the immigration court of jurisdiction
and, consequently, insulate the denial of Britkovyy’s adjust-
ment-of-status application from judicial review. Recognizing
that we lack jurisdiction over this case will not preclude him
from receiving judicial review of the IJ’s decision. Britkovyy’s
removal proceedings remain pending. If those proceedings
result in a ﬁnal order of removal, Britkovyy can raise this issue
on appeal to the Board of Immigration Appeals and, if neces-
sary, in a petition for review by this court. See 8 U.S.C.
§§ 1229a, 1252(b); 8 C.F.R. §§ 1240.1, 1240.15.
 III. Conclusion
 The plain text of 8 U.S.C. § 1252(a)(2)(B)(i) strips us of ju-
risdiction to review USCIS’s denial of an adjustment-of-status
application. This immigration-speciﬁc jurisdiction-stripping
statute in turn bars Britkovyy from using the APA to chal-
lenge USCIS’s denial of his application. See Dijamco, 962 F.3d
at 1003. Therefore, we vacate the district court’s judgment and
remand with instructions to dismiss for lack of jurisdiction.