[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10372

_____

JOCELYN COMMANDANT,
CAREL CARIUS,
RONALD SIMON,
RICARDEAU BELIARD,
JUAN DIAZ,

Plaintiffs-Appellants,

CARMELA GUZMAN-IRAHETA, et al.,

Plaintiffs,

*versus*

DISTRICT DIRECTOR, MIAMI DISTRICT (S24), USCIS,
DISTRICT DIRECTOR, TAMPA DISTRICT (S23), USCIS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23630-CMA

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

LUCK, Circuit Judge:

Five temporary protected status beneficiaries—Jocelyn Commandant, Carel Carius, Ronald Simon, Ricardeau Beliard, and Juan Diaz—appeal the district court's order dismissing their complaint for lack of jurisdiction. The district court concluded it lacked jurisdiction because the plaintiffs challenged the United States Citizenship and Immigration Services's (USCIS) denials of their applications for adjustment of status under 8 U.S.C. section 1255, and section 1252(a)(2)(B)(i) stripped the court of jurisdiction to review "any judgment regarding the granting of relief under section . . . 1255." 8 U.S.C. § 1252(a)(2)(B)(i). We agree with the district court that section 1252(a)(2)(B)(i) stripped it of jurisdiction to review the plaintiffs' claims. Thus, we affirm its dismissal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Temporary protected status shields eligible nationals of designated countries from removal because certain conditions in their home countries make returning unsafe or infeasible. *See id.* § 1254a(a)(1), (b)(1). If granted temporary protected status, the

beneficiary may travel outside of the United States only if he obtains the USCIS's consent. *See id.* § 1254a(f)(3); 6 U.S.C. §§ 251, 557.

The plaintiff beneficiaries here—four Haitian nationals and one Honduran national—unlawfully entered or remained in the United States. Each plaintiff was charged as inadmissible and ordered removed by an immigration judge, and each successfully applied for temporary protected status. Once becoming temporary protected status beneficiaries, each plaintiff traveled abroad with the USCIS's consent.

After traveling abroad, each plaintiff applied to the USCIS for an adjustment of status to permanent residency under section 1255. But none of the plaintiffs' applications were successful. The USCIS denied each application, explaining that it lacked jurisdiction to adjudicate them. The USCIS lacked jurisdiction because, in its view, the plaintiffs' removal orders were still effective, meaning that an immigration court would have exclusive jurisdiction to adjudicate the applications under 8 C.F.R. sections 245.2(a)(1) and 1245.2(a)(1). The agency concluded the removal orders remained effective because the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 required that a beneficiary returning from travel abroad have "the same immigration status [he] had at the time of departure." *See* Pub. L. No. 102-232, § 304(c)(1), 105 Stat. 1733, 1749 (MTINA) (providing that a beneficiary "authorize[d] to travel abroad temporarily and who returns to the United States . . . shall be inspected and admitted in the same immigration status the alien had at the time of departure").

The plaintiffs filed a putative class action complaint against two USCIS district directors, in their official capacities, under the Administrative Procedure Act, Mandamus Act, All Writs Act, and Declaratory Judgment Act.[1]  Their complaint had two counts.  The first count alleged that the USCIS's denials of the plaintiffs' adjustment-of-status applications were based on an impermissible construction of the MTINA.  In support of that count, the complaint asserted that the USCIS misinterpreted the MTINA by not treating the plaintiffs as "inspected and admitted" upon their returns from foreign travel, and being "admitted" would've meant their removal orders were no longer effective.  The second count alleged that the USCIS arbitrarily and capriciously changed the agency's policies by applying the MTINA "in order to deny permanent residence to the plaintiffs . . . , and [the agency] did so through individualized adjudications," although it hadn't done that before 2017.

The complaint requested relief specifically tailored to the five named plaintiffs and their own section 1255 applications.  It sought a declaration that the USCIS "unlawfully denied . . . the named plaintiffs' applications" and "that the plaintiffs . . . have been 'inspected and admitted'" under the MTINA "for the purposes of adjustment of status under [section] 1255."  It also requested that the district court enjoin the USCIS "from declining to exercise jurisdiction on all applications for permanent residence filed by the named plaintiffs."  And it asked for an order "[r]emand[ing] all of

---

[1] For simplicity, we refer to the defendants as the USCIS.

the named plaintiffs' applications for permanent residence," requiring the USCIS "to reopen all class member applications for permanent residence . . . that have been denied," and directing that the USCIS "adjudicate th[e] applications in a manner consistent with [the] declarations of law."

The USCIS moved to dismiss the complaint because the district court lacked jurisdiction and the plaintiffs failed to state a claim for relief. The district court granted the motion because section 1252(a)(2)(B)(i) stripped it of jurisdiction to review "any judgment regarding the granting of relief under section . . . 1255." 8 U.S.C. § 1252(a)(2)(B)(i). The district court explained that the term "judgment," as we read it in *Patel v. United States Attorney General*, 971 F.3d 1258 (11th Cir. 2020) (en banc), "includ[es] *all* determinations incorporated in [adjustment-of-status] decisions" under section 1255. And the plaintiffs here, the district court reasoned, sought "review of [the] denial of adjustment-of-status applications under . . . section 1255." The district court concluded it "lack[ed] jurisdiction to entertain such review under section 1252(a)(2)(B)(i)."

The plaintiffs appealed the district court's dismissal. After they did, the USCIS requested that we hold the appeal in abeyance because the Supreme Court granted certiorari to review our decision in *Patel*. We granted that request, and the Court has since affirmed our decision. *See Patel v. Garland*, 596 U.S. 328 (2022).

6                    Opinion of the Court                    21-10372

**STANDARD OF REVIEW**

We review de novo a district court's dismissal for lack of jurisdiction. *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021).

**DISCUSSION**

The plaintiffs contend on appeal that, notwithstanding *Patel*, section 1252(a)(2)(B)(i) did not strip the district court of jurisdiction to review their claims. We disagree and conclude that, under *Patel*, section 1252(a)(2)(B)(i) stripped the district court of jurisdiction to review the plaintiffs' claims.

We begin by describing the relevant statutory framework. A noncitizen who enters the country unlawfully may be ordered removed, *see* 8 U.S.C. § 1227(a)(1), but that's "not always the end of the story," *Patel*, 596 U.S. at 332. The Immigration and Nationality Act authorizes several types of discretionary relief from removal. *See id.*; *Patel*, 971 F.3d at 1265–69 (outlining how "Congress made a deliberate choice to delegate to the Executive Branch . . . the authority to allow deportable aliens to remain in this country in certain specified circumstances" (quoting *INS v. Chadha*, 462 U.S. 919, 954 (1983))). Authorized discretionary relief includes cancellation of removal under 8 U.S.C. section 1229b, voluntary departure under section 1229c, and the relief that the plaintiffs sought from the USCIS here—adjustment of status to permanent residency under section 1255. *Patel*, 971 F.3d at 1266.

"Congress has sharply circumscribed judicial review of th[is] discretionary-relief process." *Patel*, 596 U.S. at 332. To that end,

section 1252(a)(2)(B)(i) provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255." 8 U.S.C. § 1252(a)(2)(B)(i). Section 1252(a)(2)(D) is a narrow exception to that general rule; it allows judicial review "of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." *Id.* § 1252(a)(2)(D); *see Patel*, 971 F.3d at 1272 ("Section 1252(a)(2)(D) . . . restores our jurisdiction to review constitutional claims or questions of law.").

In *Patel*, the Supreme Court read the phrase "any judgment regarding the granting of relief" in section 1252(a)(2)(B)(i) as "encompass[ing] not just 'the granting of relief' but also any judgment *relating to* the granting of relief." 596 U.S. at 339. The term "judgment," the Court explained, includes "judgments 'of whatever kind' under [section] 1255, not just discretionary judgments or the last-in-time judgment." *Id.* at 338 (marks omitted) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). Defining judgment to "mean[] any authoritative decision" and "encompass[ing] any and all decisions relating to the granting or denying of discretionary relief" under section 1255 was "the only [definition] that fit[] section 1252(a)(2)(B)(i)'s text and context." *Id.* at 337–38 (marks omitted); *see id.* at 343–44 ("[Section] 1252(a)(2)(B)(i) does not stop at just the grant or denial of relief; it extends to any judgment 'regarding' that ultimate decision.").

Applied here, the district court correctly concluded it lacked jurisdiction.  Both counts of the plaintiffs' complaint challenged the USCIS's denials of section 1255 applications, and section 1252(a)(2)(B)(i) stripped the district court of jurisdiction to review *any* "authoritative decision . . . . relating to the granting or denying of discretionary relief" under section 1255.  *Id.* at 337–38 (emphasizing that section 1252(a)(2)(B)(i) applies to "judgments of whatever kind under [section] 1255" (cleaned up)).[2]  The lone narrow exception to section 1252(a)(2)(B)(i)—section 1252(a)(2)(D)—required that the plaintiffs bring their claims, if based on "constitutional claims or questions of law," in a petition to this court. 8 U.S.C. § 1252(a)(2)(D).  But instead of petitioning this court, the plaintiffs filed their complaint in the district court.[3]

---

[2] We decline to reach the USCIS's alternative arguments that the district court lacked jurisdiction because the plaintiffs' claims collaterally attacked their removal orders and challenged nonfinal agency actions.

[3] In addition to defining the term "judgment" as used in section 1252(a)(2)(B)(i) to include all decisions relating to the denial of relief under section 1255—like the USCIS's denials here—the Supreme Court also explained that "foreclosing judicial review" of the USCIS's judgments relating to section 1255 relief "would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief." *Patel*, 596 U.S. at 345–46 (citing *Lee v. USCIS*, 592 F.3d 612, 620 (4th Cir. 2010) (concluding that an expired visa holder's challenge to the USCIS's determination he was ineligible for section 1255 relief was "squarely within the scope of [section] 1252(a)(2)(B)(i)")). Although the dissenting opinion shrugs off this part of *Patel* as dicta, *see* Dissenting Op. at 1–2, *Patel*'s dicta "is not something to be lightly cast aside," *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (citation omitted). "[T]here is dicta and then there is dicta, and then there is Supreme Court dicta

Trying to get around section 1252(a)(2)(B)(i)'s jurisdiction-stripping provision, the plaintiffs point to three alternative paths of finding jurisdiction. First, the plaintiffs argue that the district court had jurisdiction because they alleged "pattern and practice claims" that are carved out of the jurisdiction-stripping provision. They maintain that the Supreme Court and this court, in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir. Unit B 1982), and *Tefel v. Reno*, 180 F.3d 1286 (11th Cir. 1999), have recognized pattern and practice claims as carved out of other jurisdiction-stripping statutes. We must interpret section 1252(a)(2)(B)(i) as also carving out pattern and practice claims, the plaintiffs contend, to avoid constitutional concerns that would arise if they can't challenge the USCIS's patterns and practices.

We assume without deciding that true pattern and practice claims are carved out of section 1252(a)(2)(B)(i)'s reach because, even if they are, the plaintiffs' claims wouldn't fall "within th[at] narrow category." *See Tefel*, 180 F.3d at 1296. *McNary* sets the stage for our discussion. There, seventeen unsuccessful applicants for

---

[like *Patel*'s]. This is not subordinate clause, negative pregnant, devoid-of-analysis, throw-away kind of dicta. It is well thought out, thoroughly reasoned, and carefully articulated analysis by the Supreme Court describing the scope of one of its own decisions." *See id.* So, like our sister circuits, we will not shrug off the *Patel* Court's dicta either. *See Abuzeid v. Mayorkas*, 62 F.4th 578, 583–86 (D.C. Cir. 2023); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1028–29 (7th Cir. 2023); *see also Cheejati v. Blinken*, 97 F.4th 988, 994 (5th Cir. 2024); *cf. Lee*, 592 F.3d at 620; *Al-Saadoon v. Barr*, 973 F.3d 794, 802 & n.6 (8th Cir. 2020).

adjustment of status to lawfully admitted "special agricultural workers" (and two organizations) filed a class action complaint alleging they were "injured by unlawful practices . . . in [the] administration of the [special agricultural worker] program." *McNary*, 498 U.S. at 487–88. The complaint alleged a variety of claims aimed at the program's rules and procedures in the abstract—that the program's interview process "deprived applicants of . . . due process," the "procedures did not allow . . . applicants to . . . challenge adverse evidence," applicants weren't allowed to present witnesses, "competent interpreters were not provided," and the interviews weren't recorded, making administrative review harder. *Id.* The government maintained on appeal that the district court lacked jurisdiction to consider the claims because 8 U.S.C. section 1160(e)(1) provided "[t]here shall be no . . . judicial review of a determination respecting an application for adjustment of status" under the statute governing status adjustments for special agricultural workers. 8 U.S.C. § 1160(e)(1); *see McNary*, 498 U.S. at 491–92.

The Supreme Court concluded that section 1160(e)(1) did not divest the district court of jurisdiction. *Id.* at 491–94. "The critical words" in section 1160(e)(1) "describe[d] the provision as referring only to review 'of *a determination* respecting *an application*.'" *Id.* at 491–92 (quoting 8 U.S.C. § 1160(e)(1)). The word "determination," the Court explained, "describe[d] a single act," not "general collateral challenges to unconstitutional practices and policies." *Id.* at 492. The *McNary* applicants' claims were "general collateral challenges" beyond section 1160(e)(1)'s scope because those claims "d[id] not seek review on the merits of a denial of a

particular application," "d[id] not seek a substantive declaration that the[ applicants we]re entitled to [special agricultural worker] status," and, if successful, would not "have [had] the effect of establishing their entitlement to [the] status." *Id.* at 492–95.

For our part, we concluded in *Smith* and *Tefel* that jurisdiction existed to review similar claims despite a different jurisdiction-stripping provision. In each case, we reasoned that the provision, divesting district courts of jurisdiction to review "all final orders of deportation," did not encompass claims alleging "a pattern and practice by immigration officials to violate the constitutional rights of a class of aliens." *Smith*, 676 F.2d at 1026, 1032–33 (quoting 8 U.S.C. § 1105a(a) (1976)); *see also Tefel*, 180 F.3d at 1290, 1296–97 ("Plaintiffs assert the type of class-wide challenges to . . . practices that fall outside the [jurisdiction-stripping statute]."). But we "emphasize[d]" the "narrowness of our holding[s]" based on the "factual uniqueness" of the claims. *Smith*, 676 F.2d at 1033; *see Tefel*, 180 F.3d at 1297 (explaining that we "carefully noted the limited nature of th[e pattern and practice] exception[]" in *Smith*).

The *Smith* and *Tefel* claims were "unique[]" because, as in *McNary*, they did not challenge specific results of discrete immigration proceedings or seek relief that would've entitled the plaintiffs to a certain result in those proceedings. *See Smith*, 676 F.2d at 1033 ("The distinction we draw is one between . . . pass[ing] upon the merits of an individual deportation order and any action in the deportation proceeding . . . , [and] the authority of a district court to wield its equitable powers when a wholesale, carefully

orchestrated, program of constitutional violations is alleged."); *Tefel*, 180 F.3d at 1297 ("Plaintiffs do not challenge the specific result in any single case and do not argue that any of the individual Plaintiffs would receive suspension of deportation if their applications received full consideration."). We "refuse[d] to condone . . . end-run[s] around the administrative process" such as, for example, casting what's really an individualized claim as a unique one alleging an unconstitutional pattern and practice in the abstract. *Smith*, 676 F.2d at 1033 ("Casting as a constitutional violation an interlocutory procedural ruling by an immigration judge will not confer jurisdiction on the district court."); *see Tefel*, 180 F.3d at 1297 (discussing *Smith*).

Unlike in *McNary*, *Smith*, and *Tefel*, the plaintiffs here do not challenge any policy or practice in the abstract. The relief requested in their complaint challenges specific results of discrete proceedings—the denials of their section 1255 applications. The requested declaratory relief includes, for instance, a substantive declaration that the USCIS *"unlawfully denied . . . the named plaintiffs' applications"* and "that the plaintiffs . . . *have been 'inspected and admitted'"* under the MTINA "for the purposes of adjustment of status under 8 U.S.C. [section] 1255." (emphasis added). *Compare McNary*, 498 U.S. at 495 (emphasizing that the plaintiffs "d[id] not seek a substantive declaration" that they were entitled to a certain status). The proposed injunctive relief is also tailored to the USCIS's denials of these plaintiffs' applications; it would enjoin the USCIS "from declining to exercise jurisdiction on all applications for permanent residence filed by the named plaintiffs." And the

proposed remand order is similarly tailored because it would require the USCIS to reopen "all of the named plaintiffs' applications for permanent residence" and "*adjudicate th[e] applications* in a manner *consistent with [the] declarations of law*." (emphasis added). *Compare id.* (reasoning that the plaintiffs did not seek relief that would "establish[] their entitlement" to a certain result in the administrative proceedings); *Tefel*, 180 F.3d at 1297 (similar).

The plaintiffs' casting of this requested relief as attempting to remedy a systemwide pattern and practice of procedural violations is precisely the sort of "end-run around the administrative process" we "refuse[d] to condone" in *Smith* and *Tefel*. *Smith*, 676 F.2d at 1033; *see Tefel*, 180 F.3d at 1297. We must also refuse to condone it here. So, in short, even assuming that section 1252(a)(2)(B)(i) leaves open a pattern and practice path to jurisdiction, that's not the path these plaintiffs took.

The dissenting opinion, accusing us of "selective[ly]" quoting the complaint and ignoring "the whole story," says that the plaintiffs did take the pattern and practice path. Dissenting Op. at 3. The dissenting opinion points out how the plaintiffs' claims hinge on the USCIS's interpretation of a statute and suggests that three of their fifteen forms of requested relief are "not tied to the [plaintiffs'] own applications." *Id.* at 3–4.

Rest assured, we've read the whole story, at least the story that these plaintiffs have told us in their complaint. *See Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (explaining how "we have long recognized[] plaintiffs are 'the master of the[ir]

complaint'" (quoting *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004)).  And although the dissenting opinion tries to cast the complaint's statutory interpretation allegations as challenging some policy collateral to the USCIS's denials of section 1255 applications, each count relies on those allegations to challenge how the agency applied the MTINA *while adjudicating the plaintiffs' individual section 1255 applications*.

Specifically, count one challenged "[t]he agency's policy to deny permanent residence *to the plaintiffs . . .*, and its *actions taken under that policy*."  Count two did the same—alleging the USCIS "changed its policy in order *to deny permanent residence to the plaintiffs . . .*, and [it] did so through *individualized adjudications*" of section 1255 applications.  The fact that the plaintiffs tacked the word "policy" onto these allegations about how the USCIS misclassified them under the MTINA doesn't change how they, "in effect[,] seek to challenge . . . resolutions of their status adjustment applications."  *Sicar v. Chertoff*, 541 F.3d 1055, 1060–63 (11th Cir. 2008) (concluding that a jurisdiction-stripping provision, providing that a "determination . . . as to whether the status of any alien should be adjusted . . . shall not be subject to review by any court," barred review of a claim "contest[ing] the [g]overnment's alleged misclassification of the[ plaintiffs'] parole status on statutory interpretation grounds" because it wasn't a true pattern and practice claim).  Nor did "[t]he fact that they attempt[ed] to do so [for] a class, rather than individually," and "couched [their claims] in terms of the [Administrative Procedure Act]" make the claims true pattern and practice ones.  *See id.*

The three requests for relief cited by the dissenting opinion don't change the analysis, either.  In *McNary*, *Smith*, and *Tefel*, the Supreme Court and this court stressed that the plaintiffs' claims escaped jurisdiction-stripping provisions because they sought *no* individualized relief.  *See McNary*, 498 U.S. at 494 ("[R]espondents action does not seek review on the merits of a denial of a particular application . . . ."); *id.* at 495 ("[T]he individual respondents in this action do not seek a substantive declaration that they are entitled to [an adjustment of] status."); *Smith*, 676 F.2d at 1033 (distinguishing jurisdiction "to pass upon the merits of an individual deportation order and any action in the deportation proceeding" from "when a *wholesale*, carefully orchestrated, program of constitutional violations is alleged" (emphasis added)); *Tefel*, 180 F.3d at 1297 ("Plaintiffs do not challenge the specific result in any single case . . . .").  But the plaintiffs here—as the dissenting opinion acknowledges—plainly sought individualized relief regarding their own applications.  Thus, they did not bring pure pattern and practice claims like in *McNary*, *Smith*, and *Tefel*, meaning that they didn't take the "narrow" pattern and practice path.  *See Tefel*, 180 F.3d at 1296; *cf. Sicar*, 541 F.3d at 1063 (concluding a jurisdiction-stripping statute barred review of an entire claim under the Administrative Procedure Act although it sought a broad declaration that "releases-on-recognizance constitute paroles" under the correct interpretation of a statute).

Turning to the plaintiffs' second path, they argue that section 1252(a)(2)(B)(i) didn't require dismissal because their claims didn't challenge a *statutory* "judgment."  They assert that the USCIS

applied "claim processing" *regulations* to deny their applications—8 C.F.R. sections 245.2(a)(1) and 1245.2(a)(1)—and section 1252(a)(2)(B)(i) "does not reach an agency construction of a regulation." They rely on the Supreme Court's holding in *Kucana v. Holder* that section 1252(a)(2)(B)(i)'s companion provision, section 1252(a)(2)(B)(ii), does not apply "to determinations declared discretionary . . . through regulation" instead of through statute. *See* 558 U.S. 233, 237 (2010); *see also* 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . decision[s] or action[s] . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .").

This statutes-versus-regulations theory also misses the mark. *Kucana*'s holding was based on "key words" in section 1252(a)(2)(B)(ii) that do not appear in section 1252(a)(2)(B)(i): "*specified under this subchapter.*" 558 U.S. at 237 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). Because Congress omitted any similar key words limiting subsection (i) to judgments specified in a statute, *see Patel*, 596 U.S. at 338 (emphasizing that section 1252(a)(2)(B)(i) "does not restrict itself to certain kinds of decisions"), we will not infer that limitation exists. Instead, we "adhere[] to the general principle that Congress' use of 'explicit language' in one provision 'cautions against inferring' the same limitation in another provision." *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 34 (2016) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 384 (2013)).

The plaintiffs' third path is that, assuming section 1252(a)(2)(B)(i) *did* require dismissal of their claims, we should "hold that [section] 1252(a)(2)(B)(i) is unconstitutional as applied to this case." The plaintiffs maintain that without district court review, they would have no way to obtain meaningful judicial review of pure legal questions raised by their claims. Under *INS v. St. Cyr*, they contend, that result cannot stand. *See* 533 U.S. 289, 300 (2001) ("A construction . . . that would entirely preclude review of a pure question of law by any court would give rise to substantial constitutional questions.").

We decline to hold that section 1252(a)(2)(B)(i) is unconstitutional as applied to this case. As the Supreme Court explained in *Patel*, section 1252(a)(2)(D) "preserves review of constitutional claims and questions of law." 596 U.S. at 339. By "excis[ing] . . . legal and constitutional questions" from section 1252(a)(2)(B)(i), section 1252(a)(2)(D) carves out the questions that "implicated [the Court's] concern" in *St. Cyr*. *Id.* The remaining questions that aren't carved out of section 1252(a)(2)(B)(i)—discretionary grants of relief under section 1255—do not implicate the same constitutional concerns. *See Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008) ("[There is] no constitutionally protected interest in purely discretionary forms of relief.").

In any event, these plaintiffs have a path to meaningful judicial review of any purely legal questions raised by their section 1255 applications. The plaintiffs don't dispute that, under the USCIS's interpretation of its regulations, they may seek an adjustment of

status by filing a motion to reopen removal proceedings in immigration court and then, if unsuccessful, petition this court under section 1252(a)(2)(D).      *See* 8 C.F.R. § 1003.23; 8 U.S.C. § 1252(a)(2)(D).      That path is open notwithstanding section 1252(a)(2)(B)(i).      *See Patel*, 971 F.3d at 1272 ("Section 1252(a)(2)(D) . . . restores our jurisdiction to review constitutional claims or questions of law.").

But in this case, as we explained above, the plaintiffs took the wrong path.  They attempted to obtain judicial review of judgments regarding the denials of their section 1255 applications by filing a complaint in the district court.  Section 1252(a)(2)(B)(i), under *Patel*, stripped the district court of jurisdiction to review those judgments.  And the plaintiffs' three alternative paths to district court review—the pattern and practice theory, the statutes-versus-regulations theory, and the *St. Cyr* theory—did not otherwise confer jurisdiction.

## CONCLUSION

Accordingly, the district court's order dismissing the plaintiffs' complaint for lack of jurisdiction is **AFFIRMED.**  Nonparty temporary protected status beneficiaries have moved to intervene in the case on appeal.  But because we affirm the district court's dismissal of the complaint for lack of jurisdiction, the motion to intervene is **DENIED AS MOOT.**

21-10372                JORDAN, J., Dissenting                1

JORDAN, Circuit Judge, Dissenting.

With respect, I dissent. Unlike the majority, I believe that we (and the district court) have jurisdiction to adjudicate the appellants' pattern and practice claims.

In *Patel v. Garland*, 596 U.S. 328, 340 (2022), the Supreme Court held in the removal setting that under 8 U.S.C. § 1252(a)(2)(B) noncitizens "may not bring a factual challenge to orders denying discretionary relief, including . . . adjustment of status." *See also id.* at 347 ("Federal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)."). I dissented from our underlying decision in *Patel*, and continue to think that the Supreme Court's resolution of the issue was wrong. *See Patel v. Garland*, 971 F.3d 158, 1284 (11th Cir. 2020) (en banc) (Martin, J., dissenting). In my view, Justice Gorsuch and the dissenters in *Patel* had the better of the argument. *See Patel*, 596 U.S. at 347 (Gorsuch, J., dissenting).

*Patel* is of course binding authority regardless of my personal views. But *Patel* left open the issue presented here—whether USCIS denials of discretionary relief are reviewable by federal courts—and its dicta about that issue is not binding on us. *See id.* at 345 ("The reviewability of such decisions [i.e., USCIS denials of discretionary relief] is not before us, and we do not decide it. But it is possible that Congress did, in fact, intend to close that door."). In this case, the appellants do not take issue with any factual determinations by USCIS. They instead challenge a USCIS policy,

2                    JORDAN, J., Dissenting                    21-10372

purportedly developed through adjudication, that treats "traveling TPS beneficiaries as excludable aliens seeking entry (or, in today's parlance, as applicants for admission who are arriving aliens)." Appellants' Initial Br. at 10. So *Patel* does not control the outcome here. *See Wilkinson v. Garland*, 601 U.S. 209, 222 (2024) (explaining that "[u]nder *Patel . . .* a court is still without jurisdiction to review a *factual question* raised in an application for discretionary relief," and holding that a circuit court does have jurisdiction under § 1252(a)(2)(D) in a petition for review to consider, as a mixed question, whether a set of facts establish eligibility for discretionary relief) (emphasis added).

Some circuits have ruled that the Supreme Court's decision in *Patel* extends, by its reasoning, to USCIS denials of discretionary relief (like adjustment of status) under 8 U.S.C. § 1255. *See, e.g., Abuzeid v. Mayorkas*, 62 F. 4th 578, 583-86 (D.C. Cir. 2023); *Britkovyy v. Mayorkas*, 60 F. 4th 1024, 1028-29 (7th Cir. 2023). Assuming those decisions are correct, I still think there is jurisdiction here.

We have held that jurisdiction-stripping statutes similar to § 1252(a)(2(B) do not preclude judicial review where the challenge is to an allegedly unlawful pattern and practice by immigration authorities, and not to individual denials of relief. *See Hatian Refugee Center v. Smith*, 676 F.2d 1023, 1032-33 (5th Cir. Unit B 1982) ("[W]e are convinced that insofar as the first three counts set forth matters alleged to be part of a pattern and practice by immigration officials to violate the constitutional rights of a class of aliens they constitute wrongs which are independently cognizable in the district

court under its federal question jurisdiction."); *Tefel v. Reno*, 180 F.3d 1286, 1298 (11th Cir. 1999) ("INA § 242(g) does not alter the jurisdiction . . . over class-wide allegations of constitutional violations by the INS."). The Supreme Court has done the same. *See McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 492 (1991) ("We . . . agree with the District Court's and the Court of Appeals' reading of this language [in 8 U.S.C. § 1160(e)(1)] as describing the process of direct review of individual denials of SAW status, rather than as referring to general collateral challenges to unconstitutional practices and policies used by the agency in processing applications.").

The majority concludes that we lack jurisdiction because the appellants are not really asserting "abstract" pattern and practice claims. In support of its conclusion, the majority says that the class-action complaint challenged the denials of the appellants' own applications for adjustment of status. That is partly true, but it is not the whole story, and the majority's quoting of the complaint is selective. First, the 22 paragraphs of the complaint under the heading of "Allegations of Legal Error"—which are fully incorporated in the two counts of the complaint—do not once mention the denial of the appellants' applications and instead focus on USCIS' challenged policy. *See* Complaint, D.E. 1, at 42-47 ¶¶ 271-92. Second, the "Prayer for Relief" section of the complaint requests at least some declaratory relief that is not tied to the appellants' own applications. For example, the complaint seeks declarations that USCIS' "change in longstanding policy is based on an impermissible construction of the governing statutes, and is arbitrary, capricious, and otherwise unlawful under the [APA];" and that USCIS'

"new policy interpreting MTINA § 304(c), including any and all post hoc policy statements issued in support thereof, is based on an impermissible construction of the governing statutes, and is arbitrary, capricious, and otherwise unlawful under the [APA]." *Id.* at 52 ¶¶ (e), (f).  With respect to injunctive relief, the same is true. The complaint in part seeks to enjoin USCIS "from applying [its] new policy interpreting MTINA § 304(c) in *any and all manners* in which that policy has been or may be pronounced." *Id.* at 52 ¶ (i) (emphasis added).  That is, as Paul Harvey used to say, "the rest of the story." Carlos Watson, *The Rest of the Story: Paul Harvey, Conservative Talk Radio Pioneer*, National Public Radio (Oct. 9, 2014) (https://perma.cc/L5HT-YR8N).

Even if we (and the district court) are without jurisdiction to adjudicate some of the appellants' claims by virtue of § 1252(a)(2)(B), we are not without jurisdiction to entertain all of those claims at the pleading stage.  Subject-matter jurisdiction is not a zero-sum game. *See, e.g., Behr v. Campbell*, 8 F. 4th 1206, 1213 (11th Cir. 2021) (applying "claim-by-claim" approach when applying the *Rooker-Feldman* jurisdictional bar); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1326 (D.C. Cir. 1996) ("[S]ubject-matter jurisdiction must be determined claim by claim.").  I would vacate the district court's order of dismissal and remand for further proceedings.